Bessie Lee HARRIS, Plaintiff-Appellee,

v.

TOWER LOAN OF MISSISSIPPI, INC., Defendant-Appellant.

No. 77–3280.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1980.

Rehearing and Rehearing En Banc Denied Feb. 20, 1980.

---

Robert R. Marshall, Pat H. Scanlon, Jackson, Miss., for defendant-appellant.

Barry H. Powell, Jackson, Miss., for plaintiff-appellee.

Before WISDOM, TJOFLAT and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Appellee, Bessie Harris, filed this suit in the district court alleging a violation of the Truth-in-Lending Act in a loan transaction. The lower court granted Harris' motion for summary judgment. The judgment cancelled the note and a deed of trust securing the obligation, ordered that appellant, Tower Loan of Mississippi, Inc. ("Tower Loan"), return $1182.00 which Harris had previously paid on the note, allowed Harris to retain the loan proceeds in her possession, and awarded her a $1000 statutory penalty and $300 attorney's fees. On this appeal, Tower Loan argues that it made all material disclosures required. Alternatively, it argues that Harris is not entitled to a cancellation of the note; rescission, if allowed, should be conditioned on restitution; and that Harris is not entitled to an award of attorney's fees. We remand the cause for determination and offset of the amount which Tower Loan owes to Harris.

Tower Loan advanced $1056.34 to Harris for which she agreed to repay $2125.00 over two years. The loan was secured by a deed of trust on her home, household furniture, and an automobile. The $1056.34 figure was arrived at by deducting various fees, including the finance charge, insurance, and a recording fee, from the scheduled total of payments of $2125.00.

One fee was for fire insurance on Harris' dwelling, which was written through Tower Loan. A check for $67.96 was written in favor of Harris and Jack Lee for the premium on the policy. Jack Lee is president of Tower Loan, which was the sole beneficiary under the terms of the policy. The only disclosure of the deduction and its purpose on the disclosure statement is under "Authorized Disbursements." The entry reads "Bessie Harris—Jack Lee $67.96." The check disbursing this portion of the loan proceeds indicated that it was for dwelling insurance. The insurance policy showed on its face that the prepaid premium was $67.96.

Harris subsequently had difficulty meeting the payment terms of the loan. She enlisted the aid of Central Mississippi Legal Services ("Legal Services"), a legal services program funded by the Legal Services Corporation ("Corporation"), to negotiate more favorable repayment terms. When negotiations proved unfruitful, Harris gave notice of rescission and later filed this suit. The trial judge granted Harris' motion for summary judgment because he found a material nondisclosure which caused the finance charge to be understated.

A.  *Failure to Disclose*

The premium for dwelling insurance was not included in the finance charge. It should have been disclosed as part of the finance charge unless Harris was furnished a written statement which clearly, conspicuously, and specifically set forth the cost of the insurance, and her option of choosing the insurer. 15 U.S.C. § 1605(c) (1976); 12 C.F.R. § 226.4(a)(6). The disclosure of the property insurance under "Authorized Disbursements" is insufficient to meet this standard. Thus, the finance charge was understated. *See Woods v. Beneficial Finance Co. of Eugene*, 395 F.Supp. 9, 13 (D.Ore.1975). Even if the combined disclosures on the disclosure statement, the check, and the insurance policy were suffi-

cient to meet this standard, they were not made on the same side of a single page. 12 C.F.R. § 226.8(a); *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291, 295 note 9 (5th Cir. 1978).

### B. *Rescission and its Mechanics*

■ Since the finance charge was understated, Harris was not given an accurate disclosure of the amount of the finance charge as required by 15 U.S.C. § 1639(a)(4) (1976). Pursuant to 15 U.S.C. § 1635(a) (1976) she properly exercised her right to rescind the transaction.

■ Section 1635(b)[1] of Title 15 controls the mechanics of rescission. It requires the creditor to return all funds or property advanced by the borrower within 10 days of receiving notice of rescission. The creditor is also required to take any action necessary to reflect the termination of any security interest created under the transaction. A failure to perform these duties within the 10 day period may result in the creditor incurring statutory damages under 15 U.S.C. § 1640(a) (1976) in addition to the rescission remedy. *Gerasta v. Hibernia Nat'l Bank*, 575 F.2d 580, 583–84 (5th Cir. 1978). Once the creditor has completed his obligations, it is incumbent upon the obligor to return any value received from the creditor.

■ Nothing in section 1635(b) prevents the creditor from offsetting the value owed to it by the obligor from the sum it initially tenders to the obligor. Such an arrangement prevents a perfunctory exchange of funds and protects the lender from a dissipation of the money while it is in the hands of the obligor. We believe this to be an acceptable course because it is the only means to insure the accomplishment of the congressional purpose of restoring the parties to the status quo ante while affording the statutory remedies to the obligor.

■ We recognize that the statutory language and language from *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974) and *Gerasta*, 575 F.2d at 584, can be read as envisaging performance of obligations by the creditor followed in time by tender of the loan proceeds by the obligor. *Gerasta* also foreclosed an argument that the creditor's duties are *conditioned* upon tender by the obligor. *Id.* at 585. Nevertheless, this procedure for offsetting does not conflict with the spirit of those decisions. It will accelerate complete rescission while protecting creditors in appropriate cases. Our approval of offsetting does not conflict with *Gerasta*'s disapproval of conditional rescission in that we do not permit a creditor to refuse to perform unless or until the obligor tenders payment. The creditor must perform but is permitted to minimize losses from those borrowers who would eventually fail to tender the loan proceeds. We reaffirm the statutory language and the holding in *Sosa* that the creditor loses any rights in property unaccepted ten days after tender by the obligor.

### C. *Attorney's Fees*

■ Tower Loan claims that an award of attorney's fees was improper because Harris was represented by a legal services attorney and was not obligated to pay the attorney. *Sellers v. Wollman*, 510 F.2d 119,

---

1. 15 U.S.C. § 1635(b) (1976) reads:

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

123 (5th Cir. 1975), forecloses this argument. Tower Loan seeks to distinguish *Sellers* by arguing that the legal aid society in *Sellers* was not prohibited by federal law from accepting a fee generating case. Nothing in *Sellers* conditions an award upon compliance with statutory and regulatory provisions for the acceptance of cases by the legal services provider, and the argument is particularly unpersuasive in the present case.

The record is barren of any indication of whether the regulations for accepting a fee generating case under the Legal Services Corporation Act ("Act"), 42 U.S.C. §§ 2996 *et seq.* (1976), were met. However, we note that they were probably satisfied because the damages sought were ancillary to the principal object of rescission. 45 C.F.R. 1609.4(b).

It is also argued that Legal Services was barred from accepting this case because the Act prohibits the use of Corporation funds to finance fee generating litigation. This appraisal of the statutory language is erroneous providing Legal Services complied with the regulations for accepting a fee generating case. 42 U.S.C. § 2996f(b)(1) (1976). Even if there was a failure to comply with the regulations, the proper recourse would be to complain to Legal Services, the State Advisory Council, or the Corporation; not resistance to a fee award. 45 C.F.R. 1618.3. This procedure is designed to prevent a question of whether the Act has been violated from becoming an ancillary issue in any case undertaken by a legal services organization receiving funds under the Act. 45 C.F.R. 1618.1.

While the lower court opinion was unclear as to whether the attorney's fees should be paid to Harris or directly to Legal Services, 45 C.F.R. 1609.5(b) requires that any fee be remitted promptly to Legal Services. The judgment should provide that Tower Loan is to pay this sum directly to Legal Services. *Cf. Miller v. Carson*, 563 F.2d 741, 756 (5th Cir. 1977) (award of attorney's fees directly to counsel under 42 U.S.C § 1988 (1976)).

### D. *Judgment*

We conclude that a violation of the Consumer Credit Protection Act occurred. The district court properly cancelled the deed of trust and awarded a $1000 statutory penalty. The judgment of the district court should be modified in two respects. First, the $2182 owed by Tower Loan to Harris (consisting of $1182 previously paid on the note and the $1000 statutory penalty) should be reduced by the amount Harris owes to Tower Loan under 15 U.S.C. § 1635(b) (1976). Since the note is unclear as to which deductions from the total of payments constitute money paid for the benefit of Harris and which were charges by Tower Loan, the case must be remanded to the district court for such a determination. Harris is not liable to Tower Loan for any finance or other charge. Second, the $300 attorney's fees should be paid directly to Legal Services.

MODIFIED AND REMANDED.