**In re Jack Lee PIERCY, II, Beverly Ann Piercy, Debtor.**

**Bankruptcy No. 38001220.**

United States Bankruptcy Court, W. D. Kentucky.

April 1, 1982.

Mapother & Mapother, Louisville, Ky., for plaintiff.

Joseph S. Elder, Louisville, Ky., for defendants.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The interface of two statutory schemes of debtor protection—the Truth in Lending Act and the Bankruptcy Code—will be considered in this case. The issues, broadly stated, are (1) whether the creditor made adequate disclosure of certain protections retained by him under the contract, and (2) if not, whether the debtor's right to avoid the contract is altered in any way by his having taken bankruptcy.

On April 21, 1978, the debtors contracted with Kentuckiana Trane for the purchase and installation of an air conditioner. The contract, later assigned to the Louisville Trust Bank (now United Kentucky Bank), described the collateral but made no reference to the debtors' home, to which the air conditioner and accessories were affixed. It was against the home that the United Kentucky Bank later filed its lien.

Also on April 21, 1978, the debtors signed a "Notice of Buyer's Right to Cancel", which gave the debtors three days after the transaction was completed to cancel the contract. The notice is required by 15 U.S.C. § 1635(a) of the Truth in Lending Act (TIL) whenever a transaction may result in a lien, mortgage or other security interest on a debtor's home.

On October 3, 1979, the bank recorded the contract as a fixture lien in the real estate records of the Jefferson County Clerk's office.

The debtors received their bankruptcy discharge on September 17, 1980. Three months later the bank instituted a foreclosure action in state court against the debtors' residence to satisfy the outstanding balance under the retail installment contract.

The debtors seek to enjoin the foreclosure, asserting that the creditor failed to disclose the security interest it eventually took in their home; that the disclosure is material; and that they are entitled by virtue of the nondisclosure to rescind the contract. If the TIL issue is resolved in the bank's favor, we must also decide whether the bankruptcy discharge impairs a valid lien and whether the air conditioner and related secured items are fixtures of the debtors' real estate.

\* \* \*

The Truth in Lending Act, in pertinent part, requires disclosure of:

A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates. 15 U.S.C. § 1638(a)(10).

The creditor first suggests that the interest it was taking in the debtors' home was properly disclosed through the "Notice of Buyer's Right to Cancel". We find the disclosure inadequate, however, for a number of reasons.

First, the right-to-cancel notice did not comply with § 1638(a)(10) because it did not specifically identify the debtors' residence as being encumbered. Without so much as

reciting the debtors' home address, it simply read that the transaction "may result in a lien, mortgage, or other security interest on your home". Such a description does not constitute "a clear identification of the property to which the security interest relates".

Second, the notice was inadequate because it failed to disclose the type of security interest, i.e. a fixture lien, that was being taken. 12 C.F.R. § 226.8(b)(5) requires a "description or identification of the *type* of security interest" taken (emphasis added). In interpreting that regulation, the Sixth Circuit in *Rudisell v. Fifth Third Bank*[1] held the three-day, right-of-rescission notice inadequate as a disclosure that a mechanic's lien against a debtor's home could arise by operation of law. "The creditor", the Court wrote, "should at least disclose that a mechanic's lien may arise and cite the applicable provisions of the Ohio statutes".[2] In the case at bar, as in *Rudisell,* the right-of-rescission notice did not even specify the type of security interest that might be taken. It is not for the obligor to determine how his home might become encumbered. It is the creditor's duty to disclose it.

*Rudisell* also noted that disclosure through use of the right-of-rescission notice might violate 12 C.F.R. § 226.8(a), which requires all disclosures to be made together, either (1) on the note or other instrument evidencing the obligation, on the same side of the page and above the place of the customer's signature; or (2) on one side of a separate statement identifying the transaction. Courts have construed this regulation strictly, and have held that a debtor is not required to examine several documents to learn the terms of a loan agreement.[3] Further, separate documents describing collateral can only be used where a full and lucid

identification of the property cannot be made on the disclosure statement.[4] Above all, the intent to convey credit information through separate documents must be clear. Nothing in this right-to-cancel notice, however, indicates that it was intended to supplement the description of collateral made on the face of the contract.

Having found the disclosure deficient, we now determine whether the non-disclosed information is material. 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.9(h) allows a debtor to rescind within three years after its consummation any transaction in which the "creditor fails to deliver to the customer ... material disclosures required by this Part". Neither TIL nor the regulations provide a definition of a "material disclosure."

There has developed, however, a substantial body of case law on the issue attempting to define "material disclosure." *Ivey v. U. S. Department of Housing and Urban Development*[5] for instance, defined as material:

[N]on-disclosures which a reasonable consumer would view as significantly altering the "total mix" of information made available. That is, the omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer under the circumstances in his 'comparison shopping' for credit.[6]

We can think of few disclosures more obviously material than the disclosure that one's home might be taken as security for a debt. As the definition given in *Ivey* suggests, disclosures of a highly technical nature do not warrant classification as material.[7] Courts have, though, often found

1. 622 F.2d 243 (6th Cir. 1980).

2. Id. at 251.

3. *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976); *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 942 (9th Cir. 1975).

4. *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 442 (3rd Cir. 1977).

5. 428 F.Supp. 1337 (N.D.Ga.1977), aff'd 607 F.2d 1004 (5th Cir. 1979).

6. Id. at 1343.

7. Id. at 1341, *Davis v. Federal Deposit Insurance Corp.*, 620 F.2d 489 (5th Cir. 1980).

disclosures to be "material" which relate to the full extent of charges or fees in a credit contract.[8] The misstatement or omission of charges or fees which may result in additional, unanticipated costs to the debtor of a few dollars a month pales by comparison to an undisclosed lien on one's home.

No case better illustrates the point than the one at hand. The debtors, having received the discharge of their debts, are now faced with the prospect of losing their residence because of an encumbrance which may have been unknown to them until the foreclosure action was filed. More importantly, they were not aware the lien could be taken at the time they executed the contract. They are therefore entitled to exercise the statutory remedy—rescission— for a creditor's failure to make a material disclosure. We apply to this case the Sixth Circuit's assessment of an identical situation: "Signing [loan] papers without knowledge of a security interest on the debtor's home was the very problem the rescission remedy sought to prevent".[9]

\*     \*     \*

Although the debtors are entitled to rescind, there remains the problem of how to formulate the remedy on these facts.

■ TIL requires that upon rescission a creditor must return all money the customer has paid and terminate any security interest created by the transaction. Once the creditor has thus performed, the customer must return any property delivered by the creditor unless it is impracticable or inequitable to do so, in which case the customer must tender the property's reasonable value.

The creditor argues that rescission in this case would be inequitable because the debtors' reciprocal duty to return the property or its value would be discharged in bank-

ruptcy. There is some basis for that argument. Courts have concluded that although TIL seems to require a creditor to perform first and await return performance by the debtor, rescission, being an equitable remedy, may be conditioned upon the debtor's return of property or its reasonable value to the creditor.[10]

This judicial gloss on the rescission remedy in TIL cases, however, is not so easily applied where bankruptcy intervenes.

In a non-bankruptcy setting, the rights and duties of the parties upon TIL rescission are clear and absolute. Each party must make the other as whole as he would have been had the contract never been entered into. In the absence of bankruptcy, there is no legal impediment to either party doing what is required to restore the *status quo ante*. Consequently, the creditor's statutory duty to perform first merely establishes the order of performance; it does not alter the ultimate effect on the remedy.

Bankruptcy, however, relieves the debtor from his obligation to pay the creditor upon rescission. Conditioning rescission upon the debtor's payment therefore imposes an obligation from which the debtor has been legally freed. Unlike the situation absent bankruptcy, there is a legitimate, legal impediment to the debtor's reciprocal performance. It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because that consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.

The equities of which the creditor speaks lie in the debtors' favor. Upholding the creditor's plea for equity would allow the creditor to escape the consequences of a

---

**8.** *Bustamante v. First Federal Savings & Loan Ass'n., etc.,* 619 F.2d 360 (5th Cir. 1980); *Harris v. Tower Loan of Miss.,* 609 F.2d 120 (5th Cir. 1980); *Davis v. United Companies Mortgage of Gretna,* 551 F.2d 971 (5th Cir. 1977); *Pet. for hearing denied,* 554 F.2d 1065 (5th Cir. 1977); *Ljepava v. M.L.S.C. Properties, Inc.,* supra note 3.

**9.** *Rudisell v. Fifth Third Bank,* supra note 1, at 252.

**10.** *Rudisell v. Fifth Third Bank,* supra note 1, at 254; *Powers v. Sims & Levin,* 542 F.2d 1216, 1220–22 (4th Cir. 1976); *LaGrone v. Johnson,* supra note 3, at 1361–62; *Palmer v. Wilson,* 502 F.2d 860, 862 (9th Cir. 1974).

serious TIL violation, while at the same time negating the fresh start given the debtors upon their discharge.

This result may, as the creditor urges, be harsher than that contemplated by TIL. But the consequences that derive from bankruptcy should not interdict enforcement of the TIL remedy for nondisclosure of material credit information. We concur with the Ninth Circuit that, "Although the policy of avoiding harsh Truth-in-Lending sanctions has great weight in cases where both damages and rescission of the debt are imposed by the Act, we find it inapplicable when the harshness results from events, [i.e. bankruptcy] independent of the Truth-in-Lending claim." [11]

■ Further, although the creditor in bankruptcy cannot require the debtor to return the property's reasonable value or pay under the contract, it can, if practicable, recover the property.[12] The property may be a fixture, but its removal may nonetheless be worthwhile for the creditor. That is for the creditor to decide.

■ We also note that although the creditor cannot demand payment from the debtors, it can offset under § 553 of the Bankruptcy Code what it owes to the debtors, as a result of rescission, by what the debtors owe to it.

It appears in this case that the debtors have paid about $1,000 on the original $6,819.93 obligation. Typically, 15 U.S.C. § 1635(b) would require the creditor to first pay its customer and await the customer's return performance. In cases such as this, however, where mutual performance cannot be assured, the creditor is not prevented from offsetting what it owes to the debtors by what the debtors owe to it.[13] Section 553 is the vehicle for setting off mutual debts in bankruptcy. We reserve for the appropriate case, however, a ruling on the question of whether money damages awarded for a TIL violation can be set off against a discharged debt.[14]

■ As counsel for the prevailing party, the debtors' attorney is entitled to recover a reasonable fee under 15 U.S.C. § 1640. It makes no difference that the debtors were represented by Legal Aid. It is well settled that legal services programs are entitled to attorney's fees if they are otherwise available.[15]

Because we have granted rescission, the remaining issues of whether the property involved is a fixture to the debtors' real estate need not be addressed.

Upon the foregoing reasoning and authorities, the contract between the debtors, Jack and Beverly Piercy, and the creditor, United Kentucky Bank, is rescinded.

As a consequence, IT IS FURTHER ORDERED that:

1. United Kentucky Bank is permanently enjoined from further prosecution of Civil Action No. 80CI–11861, Jefferson Circuit Court, Division 9, styled *United Kentucky Bank v. Piercy.*

2. United Kentucky Bank shall cause to be released the fixture lien recorded with the County Clerk of Jefferson County, Kentucky.

3. United Kentucky Bank shall pay to the Legal Aid Society, Inc., attorney's fees in the sum of $615.00, representing 10.25 hours at $60.00 per hour.

This is a final order.

11. *Riggs v. Gov't. Employees Financial Corp.,* 623 F.2d 68, 74 (9th Cir. 1980).

12. Although the creditor is a bank, it is the assignee of the party that initially delivered the property. Since the bank has assumed its assignor's liability, it is likewise entitled to the property's return. See e.g. *Rudisell v. Fifth Third Bank,* supra note 1.

13. *Harris v. Tower Loan of Miss.,* supra note 8, at 123.

14. See e.g. *Riggs v. Government Employees Financial Corp.,* supra note 11, and *Krajci v. Mt. Vernon Consumer Discount Co.,* 16 B.R. 464 (D.C.E.D.Pa.1981).

15. *Incarcerated Men Of Allen Jail v. Fair,* 507 F.2d 281 (6th Cir. 1974); *Harris v. Tower Loan of Miss.,* supra note 8, at 124; *Sellers v. Wollman,* 510 F.2d 119, 123 (5th Cir. 1975).