**In re Richard J. LYNCH and Patricia I. Lynch, Debtors.**

**Richard LYNCH and Patricia Lynch, Plaintiffs,**

v.

**GMAC MORTGAGE CORPORATION OF IOWA, Defendant.**

**Bankruptcy No. 93–13353–MWV.**
**Adv. No. 93–1175–MWV.**

United States Bankruptcy Court, D. New Hampshire.

July 12, 1994.

Peter S. Wright Jr., Wright & Cherry, Henniker, NH, for plaintiffs/debtors.

Edward C. Dial Jr., Joseph McDowell, III, PA, Manchester, NH, for defendant GMAC.

Lawrence P. Sumski, Chapter 13 Trustee, Amherst, NH.

### MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge:

The matter before the Court is plaintiffs' motion for summary judgment on their complaint filed on December 3, 1993, under the Truth in Lending Act. 15 U.S.C. §§ 1601–1693r ("TILA"). In their complaint, the debtors/plaintiffs, Richard Lynch and Patricia Lynch, seek a determination that they have properly rescinded any security interest held by the defendant, GMAC Mortgage Corporation of Iowa, and that the defendant does not hold a valid secured claim. They further seek damages against the defendant for failure to rescind, including legal fees, and a determination of the defendant's claim.

On March 14, 1994, the plaintiffs filed their motion for summary judgment supported by an affidavit and memorandum of law. The motion for summary judgment sought the following:

A. That the Court enter an order declaring Defendant GMAC's security interest in Debtors' homestead at 17 Coburn Road, Derry, New Hampshire rescinded and void;

B. That the claim of Defendant GMAC be classified as wholly unsecured;

C. That the Court order that Plaintiffs are entitled to recoupment or setoff of all interest, fees and charges paid under the rescinded transaction and that such amount be deducted from the claim of Defendant;

D. That Debtors be allowed to recoup $1,000 from Defendant's Proof of Claim, if any, for Defendant's refusal to honor, in a timely fashion, the Notice of Rescission;

E. That Defendant's claim be allowed for not more than $67,600.80;

F. That attorney's fees and costs be awarded Debtors pursuant to 15 U.S.C. § 1640; and

G. For such other and further relief as is just.

On April 2, 1994, the defendant filed its objection and memorandum of law supported by an affidavit of Jonathan P. Andrews, an associate counsel with the defendant. Supplemental memoranda were filed by both parties subsequent to a pretrial hearing and argument held on May 4, 1994. For the reasons stated herein, the Court grants the motion for summary judgment with respect to requests C, D and F. The Court denies the motion for summary judgment with respect to requests A, B, E and G. A further evidentiary hearing shall be held to determine the amounts due under requests C, E and F.

### FACTS

On February 1, 1990, the plaintiffs borrowed the sum of $99,750.00 from First American Mortgage Trust, which loan was secured by a first mortgage on the plaintiffs' primary residence. The purpose of the loan was to refinance existing obligations and was not a "residential mortgage transaction" as defined in 15 U.S.C. § 1602(w). On February 28, 1990, the loan documents, including the mortgage, were assigned to ComFed Savings Bank. On September 27, 1991, Resolution Trust Corporation, as receiver of ComFed Savings Bank, assigned the loan documents to GMAC Mortgage Corporation of Iowa, the defendant herein. Payments on the loan were made through June 1992. On December 7, 1992, plaintiffs sent a letter notifying the defendant of their intent to rescind the loan. This notice was sent by certified mail and received by the defendant

on December 10, 1992. On December 29, 1992, the defendant sent a letter to debtors' counsel requesting the specifics of the alleged violation of the Truth in Lending violations. The affidavit of Attorney Andrews indicates that, on December 29, 1992, he also talked to debtors' counsel by telephone at which time he was informed that the debtors did not have the ability to tender payment to the defendant. On January 22, 1993, debtors' counsel informed the defendant by letter of the alleged violations; a $300.00 processing fee, a $200.00 secondary market cost and a $200.00 funding fee. These amounts, the letter stated, were included in the amount financed, but should have been included in the amount of the finance charge. The letter in addition suggested that the matter could be settled if the defendant refinanced the balance due after the various amounts were deducted for violation of the Truth in Lending Act.

The record indicates no response from the defendant. On October 20, 1993, the defendant forwarded a notice of foreclosure to counsel for the plaintiffs. The foreclosure was to be held on December 7, 1993. There is no evidence in the record that the plaintiffs at any time tendered payment to the defendant.

On December 3, 1993, plaintiffs filed their petition in this Court under chapter 13 of the Bankruptcy Code. On December 3, 1993, plaintiffs also commenced this adversary proceeding.[1] At the hearing held on May 4, 1994, counsel for the defendant indicated that the defendant was not contesting whether there were material violations of the Truth in Lending Act, that the notice of the rescission was provided in a timely manner, or its liability as an assignee (15 U.S.C. § 1641(c)). The parties further agreed that, despite the ruling of this Court on the motion for summary judgment, certain amounts were in dispute and an evidentiary hearing would have to be held.

## DISCUSSION

■ The core of the controversy before the Court is plaintiffs' request that this Court find that the security interest of the defendant was rescinded and is void. A finding for the plaintiffs on this request would necessarily lead to a finding on behalf of the plaintiffs that the claim of the defendant is unsecured. Plaintiffs' argument rests solely on the language of 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23.[2] Despite the last sen-

---

1. The defendant's proof of claim indicates it is owed $124,637.08 as of December 3, 1993.

2. Section 1635(b) of TILA provides:
   When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charges, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if the return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.
   15 U.S.C.A. § 1635(b) (West 1982). Truth in Lending regulation 226.23(d) provides:
   **Effects of Rescission.** (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
   (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
   (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Ten-

tence of section 1635(b), which was added by amendment in 1980 and became effective in 1982, the plaintiffs argue that the defendant's security interest terminated automatically upon the giving of the notice of rescission and this Court cannot now condition that termination on tender by the plaintiffs since the termination was substantive and not procedural. In support of this proposition, the plaintiffs cite TILA regulations 226.23(d)(1) and (4).

Nearly all the courts of appeals that have decided this issue have decided against the plaintiffs' interpretation, holding instead that courts have an inherent power to condition rescission under proper circumstances. In one recent decision, the Eleventh Circuit Court of Appeals held, after a thorough review of TILA and the 1980 amendments thereto, that "a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just in view of all surrounding circumstances." *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992). The Eleventh Circuit pointed out in that case that the TILA rescission process has two goals; the first of placing a consumer in a much stronger bargaining position, and the second, "to return the parties most nearly to the position they held prior to entering into the transaction." *Id.* at 1140. The court then went on to state that the addition of the last sentence of 1635(b) was a reflection of this last equitable goal. In further support of its position, the court relied on the fact that, even prior to the 1980 amendments that were effective in October 1982, the majority of the circuit courts that addressed this issue allowed judicial modification of the rescission process. *Id.* (citing decisions from the Fourth, Sixth, Ninth and Tenth Circuits). The Fifth Circuit cases *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120 (5th Cir.1980), and *Gerasta v. Hibernia Nat'l Bank*, 575 F.2d 580 (5th Cir. 1978), relied on by the plaintiff in this case

were expressly rejected by the court because they were decided prior to the effective date of the 1980 amendments. *Id.* at 1142 n. 8.

The Fourth and Eighth Circuits likewise have found an inherent power to condition rescission. In *FDIC v. Hughes Dev. Co.*, 938 F.2d 889 (8th Cir.1991), the Eighth Circuit summarily held, "... however, the Act gives courts discretion to devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the debtor's prior return of the principal." *Id.* at 890 (citing decisions from the Fourth, Sixth and Ninth Circuits). The Fourth Circuit, in a pre-amendment case in which the debtors, within the period during which the creditor must have acted, took the position that they would not make full restitution to the creditor, found that the creditor was not obligated to cancel its security interest. *Powers v. Sims and Levin*, 542 F.2d 1216, 1221 (4th Cir.1976) ("But surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.")

On the facts of the instant case, Congress could not have intended that the security interest of the defendant be voided when the plaintiffs were unable to tender payment to it. The sworn affidavit of Attorney Andrews indicates the plaintiffs' counsel, within the twenty-day period in which the creditor had to act, advised him of the plaintiffs' inability to tender payment. This inability is further supported by the fact that the plaintiffs had made no payments to the defendant for a period of five to six months prior to the notice of rescission.

The plaintiffs heavily rely on *Celona v. Equitable Nat'l Bank*, 98 B.R. 705 (E.D.Pa.1989), in which the United States District Court for the Eastern District of Pennsylvania affirmed the bankruptcy court's

---

der of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within two calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by the court.
Truth in Lending Regulations (Regulation Z), 12 C.F.R. § 226.23(d), *reprinted in* 15 U.S.C.A. foll. § 1700 (West 1982).

decision ordering rescission and treating the remaining lender claim in a chapter 13 reorganization as totally unsecured. That court, citing *In re Piercy*, 18 B.R. 1004 (Bankr. W.D.Ky.1982), found that a bankruptcy court's "equitable discretion in TILA rescissions is limited." *Celona*, 98 B.R. at 708. This Court, as have other bankruptcy courts,[3] rejects the reasoning of that court and adopts instead the reasoning of the majority of the circuit courts cited *infra*. This Court can see no reason why the circuit courts and the district court, in exercising their equitable powers, can condition the right of rescission, but the bankruptcy court cannot.[4] Clearly, the bankruptcy court is a court of equity.

The legislative history of TILA supports this view. The legislative history to the 1980 amendments gives, as an example of a court-ordered modification, one in which "a consumer in bankruptcy or wage earner proceedings is prohibited from returning the property [to the lender as part of the rescission process]." S.Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, 264–65. Immediately after this example, the legislative history reads, "[t]he committee expects that the courts at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the act." *Id.* There could not be a clearer indication of congressional intent to include the bankruptcy court as a "court" authorized to modify the rescission process than this passage in the legislative history.

■ In the *Piercy* case, a pre–1982 amendment case, the court found that to accept the creditor's plea for equity would allow the creditor "to escape the consequences of a serious TIL [Truth in Lending] violation." 18 B.R. at 1007–08. This Court disagrees. To condition the voiding of the security interest on the tender of payment even in the bankruptcy context places the creditor and the debtor in exactly the same position they would be in outside of bankruptcy; i.e., the debtor may still rescind, the creditor's claim is reduced by the amount of the finance charges paid and the debtor is entitled to the statutory penalty and attorney fees.

Congress could not have contemplated the result which would occur in this case were the Court not to condition the voiding of the security interest on tender of payment of whatever principal remains on the outstanding indebtedness. Absent a violation of TILA, the defendant, which has a security interest solely on the plaintiffs' residence, would be entitled to the protections of section 1322(b)(2) of the Bankruptcy Code. The obligation to it could not be modified pursuant to the chapter 13 plan, entitling the defendant to retain its lien and be paid according to the terms of its original contract with the plaintiffs. Accepting the plaintiffs' position would allow chapter 13 to be utilized to provide a windfall not contemplated by the provisions of chapter 13. Were the Court to find that the security interest is void, the following result would occur: the defendant would have a totally unsecured claim, the plaintiffs would retain their residence, have an unencumbered homestead right of $60,-000.00 ($30,000.00 per spouse) and could pay the creditor under the chapter 13 plan only a fraction of the creditor's remaining claim. This result is after the plaintiffs' finance charges have been credited to them to reduce the principal amount of the loan,[5] statutory penalties have been awarded and attorney fees have been assessed. In short, the debtors/plaintiffs would receive all of the benefits accruing from a TILA violation and be relieved of the obligation to pay the remaining principal then due.

---

**3.** *E.g., In re Cox*, 162 B.R. 191 (Bankr.C.D.Ill. 1993); *In re Foster*, 105 B.R. 67 (Bankr. N.D.Okla.1989).

**4.** District court cases include *Rowland v. Magna Milliken Bank of Decatur*, 812 F.Supp. 875 (C.D.Ill.1992); *Reynolds v. D & N Bank*, 792 F.Supp. 1035 (E.D.Mich.1992); *New Maine Na-*

*tional Bank v. Gendron*, 780 F.Supp. 52 (D.Me. 1991).

**5.** If the plaintiffs' calculations are correct, the remaining principal will be approximately one-half of the claim filed by the defendant.

Such a result is considerably more than placing the consumer in a stronger bargaining position. Likewise, since the notice of rescission was delivered almost three years after the loan transaction, the Court is unable to return the parties to the position they held prior to entering the transaction. However, the defendant could have mitigated its loss had it moved to protect its rights in a court of competent jurisdiction within the twenty-day statutory period. For whatever reason, almost a year went by before the defendant attempted to foreclose, which apparently triggered this chapter 13 case and adversary proceeding.

For the reasons set forth herein, this Court refuses to grant the plaintiffs' motion for summary judgment to the extent that the result would be to leave the defendant with an unsecured claim for the balance of its principal of no more than $67,600.80. Instead, pursuant to this Court's authority under section 105 of the Bankruptcy Code and the authority of this Court to modify the rescission process provided in section 1635(b) of TILA, the Court shall enter an order granting the defendant a continuing security interest in the plaintiffs' homestead to secure the amount of its claim as determined by this Court after an evidentiary hearing on the amount of interest, fees and charges to be deducted from defendant's claim in this chapter 13 case. The Court's order will further allow the plaintiffs to recoup the sum of $1,000.00 from the defendant's claim, the $1,000.00 being the civil damages provided for in section 1640(a)(2) of TILA, and also award the plaintiffs attorney fees in an amount to be approved by this Court in accordance with section 1640(a)(3) of TILA.

A separate order will issue.