**Robert RAY**

v.

**CITIFINANCIAL, INC.**

**No. CIV. JFM–02–2758.**

United States District Court, D. Maryland.

Oct. 28, 2002.

Scott C. Borison, Legg Law Firm LLC, Frederick, MD, for Robert Ray.

Richard L. Costella, Miles and Stckbridge PC, Baltimore, MD, for Citifinancial, Inc.

## MEMORANDUM

MOTZ, District Judge.

This is an appeal by CitiFinancial, Inc., from an order of the Bankruptcy Court rescinding CitiFinancial's lien on the debtor's home without conditioning the rescission upon the debtor tendering to CitiFinancial its "legal due." I find that the Bankruptcy Court erred in its analysis of the legal issues in certain respects and that the errors led the court to an inadequate consideration of the factors that should have guided the exercise of its discretion in determining the relief to afford the debtor. I further find, however, that, contrary to the position advanced by Citi-Financial, the Bankruptcy Court does have authority under section 1635(b) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(b), to order rescission of a lien without conditioning the rescission upon return to the creditor of the net balance due on the loan secured by the lien. Accordingly, I will reverse the Bankruptcy Court's order and remand the case to the Bankruptcy Court for further proceedings.

### I.

On October 9, 2000, the debtor, Robert Ray, and his spouse, Rose Ray, borrowed $18,876.08 from CitiFinancial. The interest on the loan, which the Rays paid a five point fee to obtain, was 18.99% per year. The loan was secured by a second mortgage on the Rays' home. As part of the transaction, the Rays were required to pay a prepaid finance charge of $943.81; a credit life insurance premium of $2,350.15; an involuntary unemployment insurance

premium of $1,225.80; and a recording/re-leasing fee of $175.00. The Rays obligated themselves to make 120 monthly payments of $352.24, a total of $42,268.80 over ten years.

On April 3, 2001, Mr. Ray filed for bankruptcy under Chapter 13. When CitiFinancial filed a secured claim in the amount of $16,938.09, Ray instituted a complaint alleging that CitiFinancial had violated TILA and the Home Ownership Equity Protection Act ("HOEPA") by failing to disclose three business days prior to the loan closing the requisite credit terms of the loan. After conducting a trial at which four witnesses testified, the Bankruptcy Court, crediting the Rays over the two witnesses presented by CitiFinancial, found in favor of Mr. Ray on his HOEPA claim.[1] He then awarded statutory damages in the amount of $3,775.24 (plus attorney fees) against CitiFinancial. Further, he ordered that CitiFinancial's lien on the Ray residence be rescinded without requiring Ray to tender to CitiFinancial the principal net balance due on the loan.

CitiFinancial has not appealed either the Bankruptcy Court's findings or the damages award. It has, however, appealed the order of rescission.

## II.

### A.

It is undisputed that section 1635 of TILA applies to a HOEPA claim. However, the parties have diametrically opposed views concerning the scope of a court's power to order rescission of a security interest under that section. Ray argues that the section precludes a court from conditioning rescission upon a debtor's return of the benefit he received under the loan transaction being rescinded. CitiFi-

nancial, on the other hand, relying upon the Fourth Circuit's decision in *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir. 1976), contends that a court must condition rescission upon the return to the creditor of its "legal due," i.e., the amount loaned minus any appropriate offsets ordered by the court. In my judgment, neither of these views is correct.

I will begin my analysis with a recitation of the text of sections 1635(a) and 1635(b). However, it is difficult to glean from the statutory language itself the issues that divide the parties. Therefore, I recommend that any novitiate to TILA skip over the text of the statute on first reading and refer back to it as my opinion unfolds.

(a) **Disclosure of obligor's right to rescind.** Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor in accordance with regulations of the Board, of his intention to do so....

(b) **Return of money or property following rescission.** When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by

---

**1.** The Bankruptcy Court ruled against Ray on his TILA claim because he did not prove

actual damages.

operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.... If the creditor does not take possession of the property within 20 days after tender by obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. §§ 1635(a)-(b).

## B.

■ Ray takes the position that under section 1635(a) and the first sentence of section 1635(b) "rescission" is complete as soon as a consumer gives timely notice to the lender that he does not want to consummate the transaction. As noted by he Bankruptcy Court, this reading of the statute is dependent upon the assumption that when Congress enacted section 1635, it was ascribing what might be characterized as the "dictionary meaning" to "rescission," i.e., "to revoke, annul, or to repeal" or "to invalidate (an act, measure, etc.) by a later action or higher authority." *Random House's Webster's Dictionary* (2000). If this assumption is correct and rescission simply is the giving of notice of annulment, it follows that after the notice is given, nothing remains for a court to condition

rescission upon, even if the consumer has already received a benefit under the annulled transaction. In that event, the only remedy available to the creditor is to bring an action at law to recover the money or other property it had delivered to the consumer.

Some courts have adopted this view. *See, e.g., In re Quenzer,* 266 B.R. 760, 767–68 (Bankr.Kans.2001); *In re Myers,* 175 B.R. 122, 128–29 (Bankr.Mass.1994); *In re Celona,* 98 B.R. 705, 707–08 (Bankr. E.D.Pa.1989); *In re Chancy,* 33 B.R. 355, 356–57 (Bankr.N.D.Okla.1983); *In re Piercy,* 18 B.R. 1004, 1007 (Bankr.W.D.Ky. 1982); *see also Williams v. Gelt Financial Corp.,* 237 B.R. 590, 598–99 (E.D.Pa.1999). Others, including the Fourth Circuit, have rejected it. *See Powers,* 542 F.2d at 1222; *see also, e.g., Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1140–42 (11th Cir.1992); *In re Wepsic,* 231 B.R. 768 (Bankr.S.D.Cal.1998). The Fourth Circuit precedent, of course, is governing here. However, since the Bankruptcy Court's opinion questions *Powers'* continuing authority, I will briefly note the reasons I believe the view espoused by Ray and the court decisions upon which he relies is too narrow and does not provide sufficient breadth for fulfillment of Congressional intent.

■ Within the meaning of the law, "rescission" does not mean an annulment that is definitively accomplished by unilateral pronouncement. Rather, it contemplates a remedy that restores the *status quo ante.* If a party has a legal or equitable right to annul a transaction, he may do so, but only upon returning any benefit he has received. *See, e.g., Washington Homes, Inc. v. Interstate Land Dev. Co., Inc.,* 281 Md. 712, 382 A.2d 555, 563 (1978); *Lazorcak v. Feuerstein,* 273 Md. 69, 327 A.2d 477, 481–82 (1974); *Funger et al. v. Mayor and Council of Town of Somerset*

*et al.,* 244 Md. 141, 223 A.2d 168, 173 (1966) (dicta); *Norton v. Young,* 3 Me. 30 (1824); *Conner v. Henderson,* 15 Mass. 319 (1818). It is clear to me that it is in that sense that Congress used "rescission" when enacting TILA.

Section 1635(a) and the first sentence of section 1635(b), upon which Ray relies, must be read in conjunction with the second, third, and fourth sentences of section 1635(b). Those three sentences modify conventional rescission doctrine (that contemplates a simultaneous restoration of the *status quo ante)* by requiring a creditor to take certain actions before becoming entitled to a tender from the debtor. However, if Congress had not contemplated that a court has the power to condition annulment of the transaction upon a debtor's return of that which he has received, its enactment of the sequencing provisions of section 1635(b) would have been nonsensical. Why should Congress have established a procedure for restoring the *status quo ante* if a debtor could avoid the obligations the procedure imposes upon him simply by asserting that his notice of rescission under section 1635(a) voided the creditor's security interest and eviscerated any rights that it might have other than as an unsecured creditor?

Surely, Congress's establishment in the second, third, and fourth sentences of section 1635(b) of a procedure for restoring the *status quo ante* was not intended to be an empty gesture. Just as surely, Congress did not intend that if faced with a debtor's refusal to return the benefit he had received in defiance of the statutory mandate, a court of equity would be powerless to grant an effective remedy. Since these are the implications of Ray's interpretation of the language of section 1635(a) and the first sentence of section 1635(b), his interpretation must fail.

## III.

### A.

■ Having concluded that section 1635 does not preclude a court from conditioning rescission upon a debtor's tender to the creditor of the latter's "legal due," I must now consider whether section 1635 requires such a tender. Citing *Powers v. Sims and Levin, supra,* CitiFinancial argues that this question must be answered in the affirmative.

In *Powers* the borrowers made a loan for certain home improvements and to pay off existing debts. After giving timely notice of rescission, the borrowers declared that they would return the portion of the loan proceeds that was to be used for home improvements but not the portion used to pay off existing debts. The Fourth Circuit ruled that in light of that declaration, the borrowers were not entitled to rescind the transaction and void the security interest the creditor had obtained on their property. According to the Fourth Circuit, "surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers." 542 F.2d at 1221. Thus, the court held "that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." *Id.* at 1222; *see also Abel v. Knickerbocker Realty Co.,* 846 F.Supp. 445, 450 (D.Md.1994) ("[T]he weight of authority—and the apparent rule in this Circuit—holds that the Court should condition the obligor's right to rescind upon its tender to the lender of the remaining principal.").

### B.

In its opinion the Bankruptcy Court held that "the *Powers* direction that a TILA rescission cannot be judicially enforced in the absence of returning the legal due to the lender has been rendered permissive and no longer mandatory." In support of this holding the court cited two factors: the enactment of HOEPA and the Federal Reserve Board's changes to Regulation Z.

I do not find this reasoning to be persuasive. The Bankruptcy Court was correct in noting that HOEPA provides harsher penalties for statutory violations than does TILA. However, these enhanced penalties are for statutory damages only. *See* 15 U.S.C. § 1640(a)(4). Nothing in HOEPA suggests that it is intended to diminish a creditor's right to tender of its legal due under section 1634(b).

Likewise, the only possibly relevant amendment to Regulation Z promulgated since the *Powers* decision was the addition of subsection (d)(4) to 12 C.F.R. § 226.23. That subsection was added after Congress amended section 15 U.S.C. § 1635(b) to add the last sentence reading, "The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."[2] Implementing this statutory change, the addition made in new subsection (d)(4) to the regulatory provision provides that, "The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order." One court has found it to be significant that subsection (d)(4) does not encompass subsection (d)(1), relating to the voiding of a security interest "when a consumer re-

scinds a transaction." *See In re Quenzer*, 266 B.R. at 764–70. According to the reasoning in that case, subsection (d)(4)'s reference only to subsection (d)(2) and (d)(3) implies that a court does not have the power to condition a rescission upon the return to the creditor of its legal due. However, the substance of subsection (d)(1) itself was the same when the Fourth Circuit decided *Powers*, and there is no reason to suspect that the addition of the last sentence to 15 U.S.C. § 1635(b) and of subsection (d)(4) to 12 C.F.R. § 226.23—both of which simply make express the power to condition rescission that the *Powers* court found to be implied—would lead the Fourth Circuit to conclude the *Powers* holding has now become "permissive and no longer mandatory."

### C.

Although I find the Bankruptcy Court's reasoning to have been faulty, I do not believe this ends the inquiry.

Read literally, the holding in *Powers* would prevent the Bankruptcy Court from voiding CitiFinancial's security interest in the Rays' home without conditioning that action upon the Rays' tendering to CitiFinancial the net principal balance due. However, sound application of the principles of *stare decisis* involves contextual analysis, and I am persuaded the Fourth Circuit would perceive the circumstances of this case to be sufficiently different from those presented in *Powers* to justify the Bankruptcy Court's exercise of its discretionary authority to condition the voiding of CitiFinancial's lien on something less than a tender to CitiFinancial of the net principal balance due.

---

2. This provision was added for the apparent purpose of codifying the holding in *Powers* and similar cases, *see, e.g., Brown v. National Perm. Fed. Sav. & Loan Ass'n*, 683 F.2d 444, 447–49 (D.C.Cir.1982); *Williams v. Homestake Mortgage Co.* 968 F.2d 1137, 1140 (11th Cir.1992), permitting a court to condition the voiding of a security interest upon the debtor's tender to the creditor its legal due. *See* S.Rep. No. 96–368, 96th Cong., 1st Sess. 29 (1979), *reprinted in*, 1980 U.S.C.C.A.N. 236, 264–65 (emphasis added); *see also In re Lynch*, 170 B.R. 26, 29–30 (Bankr.D.N.H. 1994).

There are at least three respects in which this case is distinguishable from *Powers*. First, in *Powers* the only competing equities were between the creditor and the debtor, who sought to obtain the benefit of the bargain without giving due consideration in return. In contrast, in this case the interests of third parties, unsecured creditors of Ray, may present another set of competing equities. It is undisputed that if CitiFinancial's security interest is not voided, the monthly payments of $352.24 that Ray will have to make to CitiFinancial will prevent him from making the monthly payments of $200.00 he is scheduled to make to unsecured creditors under his proposed Chapter 13 plan (that has been approved by the Bankruptcy Court). Although the record is not presently clear on the point, it appears that although part of the proceeds of the unlawful loan CitiFinancial made to Ray in October, 2000 were used to pay off other creditors, CitiFinancial also improved its own position vis-a-vis other creditors by obtaining a more secure interest than it previously had on debts Ray owed to it. If that is so, the Bankruptcy Court might wish to consider conditioning rescission of CitiFinancial's lien not upon a tender of all of the net principal balance due (minus statutory damages and perhaps attorney fees)[3] but, instead, the net principal balance on "new" money that CitiFinancial lent as part of the October 2000 transaction.

Second, the Bankruptcy Court found that in addition to not providing Ray with the disclosures required by TILA and HOEPA, CitiFinancial also imposed unwanted and unneeded insurance charges upon the Rays as part of the loan transaction. Although this did not constitute a statutory violation for which the Rays were entitled to damages, in exercising its equitable power to fashion appropriate relief on remand, the Bankruptcy Court might want to consider deducting any of these insurance charges (and interest paid thereon) from the remaining principal balance that should be tendered to CitiFinancial.

Third, in fashioning appropriate relief, the Bankruptcy Court might also wish to consider any excessive interest and points it finds the Rays to have paid in connection with the unlawful loan.

In summary, I find that a court does have the authority to condition rescission of a security interest upon the debtor tendering to the creditor its legal due. Further, I find that *Powers* is still binding precedent and must be considered by a court in determining whether and to what extent it may order the rescission of a security interest without requiring tender to the creditor of its legal due. At the same time, I find that *Powers* is factually distinguishable from the present case and does not mandate that the Bankruptcy Court require Ray to tender the full amount of the net principal balance due as a condition to the rescission of CitiFinancial's loan. Rather, the Bankruptcy Court, while giving proper deference to the holding in *Powers* that a debtor may not receive a windfall at the creditor's expense, has discretionary authority to reduce (and, if it finds the circumstances warrant, elimi-

---

**3.** I add the word "perhaps" before "attorney fees" because an issue developed during oral argument on appeal that the parties and the court might wish to consider on remand. In its earlier opinion the Bankruptcy Court, after approving the attorney fees requested by Ray, directed that the amount of the fees be deducted as an offset from the remaining net balance due from Ray to CitiFinancial. That may be the correct ruling. However, it has the practical effect of converting Ray's attorney into an unsecured creditor or, at best, giving him a priority administrative claim. Whether or not that is the result intended by the fee-shifting provisions of TILA may be an issue that should be explored.

nate) the creditor's security interest to the extent that equitable considerations so dictate.

A separate order is being entered herewith.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 28th day of October 2002

ORDERED

1. The order entered by the Bankruptcy Court on July 22, 2002 rescinding the loan transaction between the parties without conditioning rescission on the tender of the remaining loan proceeds is reversed; and

2. This case is remanded to the Bankruptcy Court for further proceedings.