PONTIAC IMPROVEMENT COMPANY, APPELLEE, V. KATHERINE S. LEISY ET AL., DEFENDANTS: JULIUS LUDWIG, APPELLANT, OSCAR R. THOMPSON ET AL., APPELLEES.

14 N. W. 2d 384

FILED MAY 5, 1944. No. 31763.

*A. R. Oleson*, for appellant.

*Zacek & Nicholson, James D. Elliott* and *John J. Gross*, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and CHAPPELL, JJ.

PAINE, J.

This is an equity action for the foreclosure of a real estate mortgage. Decree was duly entered, from which two of the defendants appeal.

On June 17, 1925, Harry E. Leisy and wife gave a mortgage to Hugo A. Leisy upon a residence property, being lots 19 and 20, block 28, original town of Wisner, Cuming county, Nebraska, to secure payment of three notes amounting to $10,000 and interest, which mortgage was recorded in Book 44 at page 596. On April 20, 1932, this mortgage was assigned to the plaintiff corporation. On April 1, 1936, an extension agreement was entered into between the assignee corporation and the original mortgagors, extending said mortgage for five years from April 1, 1936, and agreeing that the mortgage has been re-recorded in Book 55 at page 638 of the mortgage records of Cuming county.

In the amended answer of defendant Julius Ludwig he denies that the plaintiff is a corporation, charging that its charter expired in 1939 "and no further provisions have been made to authorize the maintaining of this action," and also charging that he obtained a judgment of $39,882.50 against Irvin O. Leisy and Harry E. Leisy on November 5, 1935, and that execution was returned unsatisfied.

Said defendant further alleges that there was no consid-

eration for the mortgage of $10,000, which was given to a brother of the mortgagor for the sole purpose of hindering, delaying and defrauding his creditors. He further alleges that the extension agreement of said mortgage was executed without consideration, and that in June, 1935, the $10,-000 mortgage and note which it was given to secure were barred by the statute of limitations and ceased to be a lien upon the lots involved, and that his judgment became a first lien upon the lots in question, subject only to a tax lien, and prays that he be decreed to have a prior lien to the mortgage of plaintiff.

On April 15, 1942, Oscar R. Thompson and Thomas Thompson filed their amended answer, in which they admit the corporate existence of the plaintiff corporation; admit the filing of all instruments set out in the petition, but allege that none of them have any valid force or effect; admit that defendant Ludwig recovered a judgment as alleged in his answer, but claim that the lien of Ludwig's judgment is inferior to and subject to the lien of a judgment of $13,-514.03 which they recovered against Harry E. Leisy, mortgagor, and another on November 5, 1935. They further charge in their answer that the purported mortgage, notes and assignment and extension agreement are all part of an evil plan, device, or scheme, without consideration, to perpetrate a fraud upon existing creditors, especially these answering defendants; that if the notes and mortgage and assignment set up in plaintiff's petition are valid, they are now barred by the statute of limitations, and pray that they be decreed to have a prior lien on the real estate involved superior to the claim of the plaintiff and of other defendants.

On September 10, 1943, the cause came on for trial upon the petition of the plaintiff and the amended answers of defendants. Thereupon defendant Ludwig was granted leave to amend his answer instanter by interlineation to set out that plaintiff corporation had been chartered for 25 years only, and that its charter had expired in 1939.

The plaintiff introduced as exhibits copies of the several

statutes of Ohio relating to corporations, being duly authenticated exemplifications of the same under certificate of the secretary of state, together with a certified copy of the original articles of incorporation of the plaintiff company, showing that it was organized May 28, 1914, and was to exist for the term of 25 years.

Plaintiff also offered in evidence five certificates of amendments to the articles, duly certified by the secretary of state. The last amendment to said articles of incorporation was under date of October 15, 1940, raising the stated capital of the corporation from $500,000 to the sum of $1,000,000.

Section 8623-14 of the General Corporation Act of Ohio, in evidence before us, provides that any corporation may alter or amend its articles, and further, in section 8623-15, provides that such "amended articles shall supersede and take the place of the then existing articles of the corporation and all amendments thereto."

An examination of these exhibits shows that in paragraph three of the original articles of incorporation its life was fixed at 25 years, which would end May 28, 1939, but on May 20, 1939, the third paragraph of the said articles was amended *in toto* by written consent of all the stockholders, and entirely omitting the time of termination of the life of the corporation; that is to say, the new and amended third paragraph of the articles of incorporation established no length of life for the corporation, nor was this referred to in any other paragraph.

Section 8623-7, as set out in exhibit No. 1, provides that "Upon the filing of the articles the incorporators and their associates, successors and assigns by the name stated herein, shall, from the date of such filing, be and constitute a body corporate, with perpetual succession."

This general corporation act of Ohio, which became effective June 8, 1927, long before the amendment of the articles on May 20, 1939, repealing the limit of 25 years for its corporate existence, thus placed the corporation under the above section 8623-7, which thereby gave this corporation perpetual succession.

"If the period of its existence is not limited by its charter a corporation will exist indefinitely and until it is legally dissolved." 18 C. J. S. 469, sec. 78.

In our opinion, the plaintiff Ohio corporation was a valid, existing corporation, and there appears no ground whatever for the claim that there was anything irregular or wrong in so amending the articles of incorporation of this company, and it had the legal right to foreclose its mortgage in the state of Nebraska.

The trial court found that there was due the plaintiff the sum of $10,000 and interest, and that the mortgage had become absolute, and that plaintiff was entitled to have the premises sold to satisfy said mortgage unless the same was paid within 20 days after the date of the decree. It was ordered that the sheriff sell the premises as upon execution and bring the proceeds into court in satisfaction, first, of the plaintiff's lien, and the issues between the defendants were reserved for future determination. The defendant Ludwig filed motion asking that the decree be modified by determining the respective priority of the two answering defendants.

Thereafter, on October 19, 1943, the district court entered a supplemental decree, finding that each of the aforesaid judgments of the two defendants was rendered on the 5th day of November, 1935, but that the judgment of the defendants Thompson was first entered on the journal of the records of the court, and that thereafter the judgment of Ludwig was entered upon the journal, and therefore finds that the Thompson judgment is a lien prior to the judgment of Ludwig, which is a third lien against the property in suit; whereupon notice of appeal was given by the defendants.

The question is also presented in the brief of defendants' counsel that Thompsons' judgment is not prior to the Ludwig judgment, and that the court erred in holding that the journalizing fixed the time when the lien accrued. Attorney Oleson charges further that "it would be travesty on justice if a casual helper in the office of the clerk could, by

his entry, determine the priority of the judgments journalized."

In support of this contention, attorney A. R. Oleson called himself as a witness, and testified that he presented the evidence to the court and secured the judgment for his client, Ludwig, in the sum of $39,882.50; that he took a statement of what had been done to the clerk of the court, and asked him if the Thompson case had been decided and turned over, and he said not, and that this was the first one that came in that day.

Further evidence was taken in said matter on October 19, 1943, when attorney A. R. Oleson was examined by attorney Gross, and testified that he had called the attention of the clerk, Carl R. Stieren, to the matter, as he had prepared his journal entry and presented it to the court right after lunch and obtained his signature, and it was an hour afterward before the attorneys representing the Thompsons got theirs and took it to the clerk.

Carl R. Stieren, the clerk of the court on November 5, 1935, was then called and testified that he did not think he was present in the office that day, as "the filings and entries were made by John Dill and my brother." On cross-examination by attorney Oleson, witness testified that he had no recollection of any conversation with Mr. Oleson in reference to the judgments, and identified the filings and the entry on the appearance docket as all having been made by John Dill or his brother, but not by him.

The record then shows: "All parties rest. By the court: According to the Nebraska decisions, including the rather recent case of *Luikhart v. Bredthauer* (132 Neb. 62, 271 N. W. 165), judgments become a lien on real estate at the time of their entry upon the journal. Priority of judgment liens is accordingly determined according to the order of their entry upon such journal. Exhibit '12' is a copy of the journal of this Court showing two judgments against Harry E. Leisey, et al. The judgment of Oscar R. Thompson, et al preceeds the judgment of Julius Ludwig, et al. I therefore find that the Thompson judgment has priority over the Ludwig judgment."

In *Luikart v. Bredthauer*, 132 Neb. 62, 271 N. W. 165, upon which the trial court based its decision, we held that a judgment is rendered when the court announces its decision upon the law and the facts, but that "The entry of a judgment upon the records is not an integral part of the judicial act of rendering a judgment, although the entry thereof may be required before it can become available for certain purposes." In the text of this opinion it is said that "a judgment must be docketed before it becomes a lien upon real estate." See, also, *Rathbone Co. v. Kimball*, 117 Neb. 229, 220 N. W. 244; *Reconstruction Finance Corporation v. Maley*, 125 Fed. 2d 131.

Section 20-1504, Comp. St. 1929, reads in part as follows: "The lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof, only from the day on which such judgments are rendered. * * * Provided that a judgment shall be considered as rendered when such judgment has been entered on the judgment record."

As this last clause, under consideration in the case at bar, was added by an amendment found in Laws 1929, ch. 83, cases cited prior to this amendment would not govern on the point involved herein.

It is clear from the bill of exceptions that both judgments were announced by the court on the same day, but the judgment of the Thompsons was entered on the judgment record by the clerk prior to the entry of the judgment of Ludwig.

Finding no prejudicial error in the record, the decree and judgment of the trial court are hereby affirmed.

AFFIRMED.