In re Perry W. QUENZER, Lori A. Quenzer, Debtors.

Perry W. Quenzer, Lori A Quenzer, Plaintiffs,

v.

Advanta Mortgage Corp., USA, Defendant & Third-Party Plaintiff,

v.

The Mortgage Banc, Inc., n/k/a Home Mortgage, Inc., Third-Party Defendant.

Bankruptcy No. 99–41732–13. Adversary No. 99–7127.

United States Bankruptcy Court, D. Kansas.

May 31, 2001.

Fred W. Schwinn, Consumer Law Center PA, Topeka, KS, for debtors.

Michael D. Doering, Doering & Associates, PC, Kansas City, MO, for defendant.

Jan Hamilton, Topeka, KS, Chapter 13 Trustee.

## ORDER DETERMINING EFFECT OF RESCISSION UNDER THE TRUTH IN LENDING ACT

JAMES A. PUSATERI, Chief Judge.

This proceeding is before the Court on the debtor-plaintiffs' motion for summary judgment. The debtors appear by counsel Frederick W. Schwinn. Defendant Advanta Mortgage Corporation, USA, servicing agent for Bankers Trust Company of California (collectively "Advanta"), appears by counsel Michael D. Doering. The third-party complaint is not involved in the present dispute. The Court has reviewed the relevant pleadings and is now ready to rule. Although the parties have mentioned some other issues in their briefs, this order will deal only with the effect of rescission under the Truth in Lending Act, 15 U.S.C.A. §1601 *et seq.* ("TILA").

### FACTS

The relevant facts are not disputed. In 1997, Advanta's predecessor loaned the debtors some money, taking a mortgage on their home as security. Part of the loan was used to pay off a loan from another creditor that had been secured by a prior mortgage on the home. The TILA gives borrowers a right to rescind such a loan, ordinarily within three days, and requires the lender to give them notice of that right. Advanta's predecessor gave the debtors an incorrect notice, apparently one that would have applied only if the loan had refinanced a prior loan by the predecessor. When the creditor never gives the obligor proper notice of the right to rescind (or other disclosures required by the TILA) and the obligor has not sold the property, the right lasts for three years from the date of consummation of the transaction. 15 U.S.C.A. §1635(f). Advanta concedes the notice given violated the TILA.

The debtors filed a chapter 13 bankruptcy petition on August 5, 1999, and a few days later, notified Advanta that they were exercising their right to rescind the transaction, pursuant to §1635 of the TILA, 15 U.S.C.A. §1635, and the Federal Reserve

Board's regulation implementing the statute, 12 C.F.R. §226.23. Advanta received the debtors' notice a short time later, but apparently did not take any action during the next twenty days as a result of the notice.

## DISCUSSION AND CONCLUSIONS

 The debtors contend that their timely exercise of the right to rescind the transaction with Advanta immediately voided the security interest they had given it. Relying on a large number of cases, Advanta responds that the Court has the power to, and should, condition the voiding of the security interest on the debtors' repayment of the loan. The statutory basis for the debtors' right to rescind is 15 U.S.C.A. §1635, part of the TILA, which provides:

(a) **Disclosure of obligor's right to rescind**

Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with

regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) **Return of money or property following rescission**

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable, or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

The Court is convinced that the most natural reading of these provisions is that the obligor's decision to rescind is effective as soon as the creditor receives the notice of rescission required under subsection (a), and one immediate effect of the rescission,

stated in subsection (b), is that the security interest given to the creditor is voided. Under this reading, subsection (a) gives the obligor a unilateral right to rescind the transaction by giving the required notice, and nothing else is required to make the rescission effective. As stated in the first sentence of subsection (b), the obligor thereafter owes no finance or other charge and the creditor's security interest becomes void. The balance of subsection (b) then states reciprocal rights and duties imposed on the parties following rescission.

■ Although the last sentence of subsection (b) says the subsection's "procedures" apply except when a court orders otherwise, the word "procedures" should be read to mean something like "steps to be followed" or "actions to be taken."[1] The first sentence of subsection (b), however, does not refer to anything that someone is still to do, but instead states the consequences of an action that has already been taken, namely, the obligor's act of rescinding as described in subsection (a). If Congress had simply made the first sentence of subsection (b) the last sentence of subsection (a), no one could reasonably have read the provision differently. Still, even with the sentence placed in subsection (b), it is relatively clear that the authority of courts to change the rescission procedures is limited to the steps specified in the subsequent sentences. Only by reading the word "procedures" to be much broader than its ordinary meaning could one think

the last sentence of subsection (b) gives courts the power to change the effects of rescission that are specified in the first sentence of the subsection.

■ Even if the statute might be considered not to indicate unambiguously whether a court can alter the voiding of the creditor's security interest that is mentioned in the first sentence of subsection (b), the Federal Reserve Board (the "Board" referred to in the statute; hereafter "FRB") has promulgated a regulation—found in 12 C.F.R. Part 226, all of which is commonly known as "Regulation Z"—directly answering that question. It reads:

(d) Effects of rescission.

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor

---

1. According to Black's Law Dictionary on Westlaw (Garner, editor in chief, 7th ed. 1999), "procedure" means: "1. A specific method or course of action. 2. The judicial rule or manner for carrying on a civil lawsuit or criminal prosecution." A general dictionary gives the following definition: "1.a. a particular way of accomplishing something or of acting; b. a step in a procedure. 2. a series of steps followed in a regular definite order .... 3.a. a traditional or established way of doing things; b. [the third definition given for 'protocol': 'a code prescribing strict adherence to correct etiquette and precedence (as in diplomatic exchange and in the military services)']." Webster's New Collegiate Dictionary 917 ["protocol" at 927] (G. & C. Merriam Co. 1975). The Court believes the paraphrases offered in the text supply an appropriate meaning for the word in the statute's context.

has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

12 C.F.R. §226.23(d). This regulation gives the statute the reading the Court described above as more natural. Under it, the creditor's security interest becomes void as soon as the obligor rescinds, and the "procedures" that courts may modify are limited to the exchange of money and property, and any action the creditor must take (presumably on any relevant public record) to show that the security interest is terminated. When the agency charged with enforcing a statute has promulgated a regulation that adopts a permissible construction of the statute, the courts must defer to that interpretation and not impose their own. *Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Furthermore, the Supreme Court has indicated this rule is especially strong in the context of the TILA and Regulation Z, where even official staff interpretations of the statute and regulation should control unless shown to be irrational. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559–70, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *see also Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (citing *Milhollin*, Court indicated that absent "obvious repugnance" to statute, FRB's regulation implementing TILA and interpretation of that regulation should be accepted by courts).

Some years ago, the Tenth Circuit rejected a creditor's argument that the obligor had to pay or tender the balance due on the loan before she could obtain rescission under the TILA. *Rachbach v. Cogswell*, 547 F.2d 502, 505 (10th Cir.1976). The Circuit said, "Under the Truth in Lending Act the tender back of consideration is not a prerequisite to rescission. Section 1635(a) requires only that the obligor exercise his right of rescission by notifying the creditor within the prescribed time limit of his intent to rescind. *Palmer v. Wilson*, ... 502 F.2d 860, 861–62 [(9th Cir.1974)]." *Id.*[2] After saying this, however, the Circuit also

---

**2.** The Circuit did not quote the version of §1635(a) then in effect, but a review of the relevant session laws shows that subsection (a) was essentially the same in all material respects in 1976 as it is now. *Compare* Truth in Lending Act, Pub. L. No. 90-321, Title I, §125, 82 Stat. 153 (1968), *reprinted in* 1968 U.S.C.C.A.N. 176, 184, *as amended by* Act of Oct. 28, 1974, Pub. L. No. 93-495, Title IV, Amendments to TILA, §404 (1974), 88 Stat. 1500, 1517, *reprinted in* 1974 U.S.C.C.A.N. 1724, 1745, *with* Truth in Lending Simplification and Reform Act, Title VI of Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-221, §612(a)(4), *reprinted in* 1980 U.S.C.C.A.N. (94 Stat.) 132, 175 (last amendment of subsection (a)).

Congress has amended §1635 two times since 1980, but did not change subsection (a) either time. *See* Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, §§5 & 8, *reprinted in* 1995 U.S.C.C.A.N. (109 Stat.) 271, 274, 275–76 (adding subsections (h) and (i) to §1635); The Housing and Community Development Technical Amendments Act of 1984, Pub. L. No. 98-479, §205, *reprinted in* 1984 U.S.C.C.A.N. (98 Stat.) 2218, 2234 (amending subsection (e) of §1635).

held that the district court had not abused its discretion by refusing to excuse the rescinding obligor from interest charges, even though the first sentence of §1635(b) said then (as now) that upon rescission, the obligor "is not liable for any finance or other charge." 547 F.2d at 505. Consequently, it is unclear whether the *Rachbach* court would have allowed a district court to override the immediate voiding of the creditor's security interest, the other effect of rescission that is stated in the first sentence of subsection (b).

■ A few years after *Rachbach* was decided, Congress amended §1635 by adding the last sentence to subsection (b), clearly giving the courts authority to change at least part of what happens when the debtor rescinds. *See* Truth in Lending Simplification and Reform Act, Title VI of Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-221, §612(a)(4), *reprinted in* 1980 U.S.C.C.A.N. (94 Stat.) 132, 175 (hereafter "TILA Simplification Act"). A short time later, the FRB completely revised Regulation Z, adopting, among other things, the current structure of §226.23(d), thus making clear that the courts' authority to alter the "procedures" of rescission does not include the authority to prevent or undo the immediate voiding of the creditor's security interest that occurs under §226.23(d)(1). *See* Truth in Lending, Revised Regulation Z, 46 Fed. Reg. 20848, 20905 (Apr. 7, 1981) (codified at 12 C.F.R. §226.23(d)) (hereafter "Revised Regulation Z"). Since the TILA Simplification Act added the last sentence to subsection (b) of the statute and the FRB adopted Revised Regulation Z, at least some courts have followed the clear direction of §226.23(d) of the revised regulation, and held that the security interest in the obligor's residence is terminated when the rescission notice is given. *E.g., Celona v. Equitable National Bank,* 98 B.R. 705, 707–08 (E.D.Pa.1989); *Ralls v. Bank of New York (In re Ralls),* 230 B.R. 508, 521–22 (Bankr.E.D.Pa.1999); *see also Myers v. Federal Home Loan Mortgage Co. (In re Myers),* 175 B.R. 122, 128–29 (Bankr.D.Mass.1994) (applying Massachusetts law that is essentially the same as §1635, and relying on cases decided under TILA).

Under §1635 as it existed before Congress inserted the express authority for courts to alter the procedures that subsection (b) contains, a number of circuit courts, in addition to the Tenth Circuit in *Rachbach,* had concluded courts could alter the statutory scheme because rescission is an equitable remedy. *See, e.g., Brown v. National Permanent Federal Savings and Loan Ass'n,* 683 F.2d 444, 447–49 (D.C.Cir.1982) (noting 1980 amendments to TILA did not take effect until Oct. 1, 1982); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 253–54 (6th Cir.1980); *LaGrone v. Johnson,* 534 F.2d 1360 (9th Cir.1976); *Palmer v. Wilson,* 502 F.2d 860, 861–63 (9th Cir.1974); *Gerasta v. Hibernia Nat'l Bank,* 575 F.2d 580, 583–85 (5th Cir. 1978); *Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120, 123 (5th Cir.1980); *see also Powers v. Sims & Levin,* 542 F.2d 1216, 1220–22 (4th Cir.1976) (determining obligors had right of rescission that they tried to exercise, but creditor's ensuing obligations were excused when, within time for creditor to perform, obligors committed anticipatory breach of contract by telling creditor they would not perform their reciprocal obligations; indicates creditor retained its security interest under the circumstances). However, only *LaGrone* clearly held that the creditor's security interest could survive the obligor's attempted rescission if the obligor failed or refused to fulfill the obligations imposed on

him or her by §1635(b).[3]

The Court is convinced that the wording of the 1980 amendment that expressly granted the courts some limited authority over the rescission process, coupled with the FRB's 1981 adoption of Revised Regulation Z, overcome any suggestions in the cases decided under the prior law that a court can prevent the voiding of the creditor's security interest, or can require the obligor to pay interest or other finance charges. If a court can require the obligor to pay to obtain the voiding of the security interest, the court can render the voiding language of §1635(b) meaningless (and simultaneously ignore §226.23(d) of Revised Regulation Z), because a creditor must always release its lien once it has been paid its due. A creditor that fears the possibility that its notice of the right of rescission under §1635 may be found to be inadequate can avoid the danger simply by requiring the obligor to provide security other than his or her principal dwelling for the credit, such as a vacation home, car, boat, or other property. Even when §1635 applies, the right of rescission can be limited to three days by giving proper notice of the right and the other disclosures required by the TILA. As the dissenting judge put it in *Palmer v. Wilson:*

> Of course, the rescission of a creditor's security interest is a harsh remedy if the debt is not otherwise collectible, but the [creditors] could have avoided it by complying with the requirements of the [TILA]. Moreover, the possibility

that the principal debt will be uncollectible is a common circumstance in cases of this sort. It is hardly an unusual situation where we might infer Congress did not intend the result. Although the remedy might be harsh, it is the one Congress adopted, and I would not substitute our judgment for its.

502 F.2d at 864.

Since the 1980 changes, despite the more natural reading of §1635 and the crystal clear interpretation supplied in 1981 by §226.23(d) of Revised Regulation Z, a number of courts have refused to declare a creditor's security interest void on the creditor's receipt of the obligor's notice of rescission, and instead conditioned the voiding in some way, generally on the obligor's payment or tender of the principal balance of the loan, as adjusted by the creditor's payment obligations under §1635(b). One circuit case affirmed a district court decision that conditioned the obligors' attempted rescission on their repayment of the loan principal within one year, and allowed the creditor to foreclose on the residence if they failed to make the repayment. *FDIC v. Hughes Development Co.,* 938 F.2d 889, 890 (8th Cir.1991), *cert. denied* 502 U.S. 1099, 112 S.Ct. 1183, 117 L.Ed.2d 426 (1992). However, the Circuit supported this decision only by citing three pre-TILA Simplification Act decisions, *Rudisell, Powers,* and *LaGrone,* and gave no indication that it was aware of §226.23(d) of Revised Regulation Z. As a result, the

---

**3.** *Palmer* might fit this category as well, but it is hard to tell. The majority opinion merely said that a court may condition rescission on the obligor's tender of repayment of the loan, 502 F.2d at 861–63, but the dissenting opinion indicated the majority's condition could effectively include reinstatement of the lien, *id.* at 863.

Although the court in *Powers* held the creditor's lien survived the obligors' attempted rescission, that ruling seems to have rested on

the conclusion the obligors breached the contract through anticipatory repudiation, and thus excused the creditor from performing its obligations under §1635(b). Still, the court seemed to suggest the creditor's security interest would also have survived if the creditor had first performed and the obligors then failed to perform their reciprocal obligations, so the case might also fit the *LaGrone* category.

opinion is not at all persuasive under current law.

In a rather astonishing decision, the Eleventh Circuit noted the clear meaning of §226.23(d) and its obligation to defer to the FRB's interpretation of the TILA, agreed that reading the regulation to bar courts from altering the immediate voiding of the security interest was "technically correct," and yet concluded that the legislative history of the TILA Simplification Act established that courts can override the voiding of the security interest. *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir.1992). The Circuit also referred to the word "procedures" in §1635(b), calling it "plain language" that meant a court could condition the voiding of the creditor's security interest. *Id.* This Court questions whether legislative history alone can override the FRB's interpretation of §1635, even if the history were clear on the point. As indicated earlier, the Court also disagrees that §1635(b) must be read to grant the courts such power, believing instead that it is difficult to read it even as potentially doing so. Perhaps more significantly, however, the Court believes the legislative history relied on does not support the Eleventh Circuit's view any more clearly than does the statute itself. The Circuit quoted the last of the following three sentences from the history:

> [A] court is authorized to modify this section's procedures where appropriate. For example, a court might use this discretion in a situation where a consumer in bankruptcy or wage earner proceedings is prohibited from returning the property. The committee expects that the courts, at any time during the rescission process, may impose equitable considerations to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the Act.

S.Rep. No. 96-368, 96th Cong., 2d sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, 264-65. Like the word "procedures" in the statute, the words "rescission process" in the history could refer merely to the actions that are to be taken, pursuant to subsection (b), after the obligor acts, under subsection (a), to rescind the transaction and make the security interest void. Indeed, the last sentence, the one quoted by the Circuit, refers only to the consumer's obligations *after* the creditor has performed, and by that point, the security interest has already been voided. The middle sentence of the quote might refer to the possibility that if the sequence of actions laid out in §1635(b) were followed and the creditor gave money or property to a debtor in bankruptcy, the money or property would become property of the bankruptcy estate under 11 U.S.C.A. §541(a), and the debtor would not be authorized to return any of it to the creditor. Moreover, in the pre-TILA Simplification Act circuit cases cited above, the most common court-ordered alteration of the statutory procedure seems to have been to allow the creditor to set off its payment obligations against the obligor's subsequent repayment obligations, an alteration that would avoid the bankruptcy estate problem and that the Act and Revised Regulation Z would clearly allow. In short, the Court is convinced that the history can be read to mean that a court can impose conditions only on the reciprocal obligations that arise after the obligor has unilaterally rescinded, automatically terminating the security interest. Presumably having considered the legislative history as well as the statute itself, the FRB has adopted that reading, and that view is certainly not irrational or repugnant to the provisions of §1635.

Despite these shortcomings in the *Williams* reasoning, some courts have subsequently relied on it (along with the pre-

TILA Simplification Act and Revised Regulation Z circuit cases cited above) to support the conclusion that they may condition the voiding of the creditor's security interest on the obligor's performance of his or her payment obligations under §1635(b). *See Lynch v. GMAC Mortgage Corp. (In re Lynch)*, 170 B.R. 26, 29 (Bankr.D.N.H. 1994); *Apaydin v. Citibank Federal Savings Bank (In re Apaydin)*, 201 B.R. 716, 723–24 (Bankr.E.D.Pa.1996). Because the Court cannot agree with *Williams*, it cannot agree with these decisions, either.

Some other decisions are also unpersuasive for somewhat different reasons. For example, in *In re Foster*, 105 B.R. 67, 69–71 (Bankr.N.D.Okla.1989), the court purportedly applied an Oklahoma rescission regulation that the court said was "identical" to §226.23 of Revised Regulation Z, but ignored the regulation's limitation on the court's power to adjust the rescission process and allowed the creditor to retain its security interest to insure the obligors fulfilled their repayment obligations. At least the *Williams* court stated a reason that could be legitimate—if the statute were worded differently—for refusing to apply the security interest voiding provision. Simply ignoring the limitation on the court's authority is hardly persuasive. In *Thorp Loan and Thrift Co. v. Buckles (In re Buckles)*, 189 B.R. 752, 765–67 (Bankr. D.Minn.1995), when the debtor in a bankruptcy case attempted to rescind, the court conditioned the attempted rescission and voiding of the lien on her tender of her duty of repayment under §1635(b), relying on the traditional equitable nature of rescission and the notion that properly perfected liens against the assets of a debtor in bankruptcy survive and remain fully enforceable after the debtor receives a discharge. The reliance on the traditional equitable nature of rescission (reasoning the *Buckles* court shares with many others) simply disregards Congress's decision, re-

inforced by the FRB, to adjust the traditional form of rescission and limit the courts' authority to apply equitable considerations under §1635. In *Rachbach*, the Tenth Circuit recognized that Congress had altered the traditional rescission remedy at least to the extent of eliminating the requirement that the obligor tender back the consideration received in order to qualify for the remedy. 547 F.2d at 505. Ironically, the *Buckles* court noted that liens survive the bankruptcy discharge only "absent consensual satisfaction or *avoidance via a remedy expressly created in* bankruptcy or *nonbankruptcy law*," 189 B.R. at 766 (emphasis added), but then failed to explain why §1635 of the TILA and §226.23 of Revised Regulation Z do not create exactly such an express avoidance remedy.

The Court would further note that in at least some of the decisions that allow the creditor to retain its lien after the obligor has rescinded the transaction, the courts seem to assume that conditioning the creditor's duty under §1635(b) to "take any action necessary or appropriate to reflect the termination of [its] security interest" on the obligor's subsequent duty to repay somehow maintains the validity of the lien, even though the statute and regulation have already deemed the security interest to be "void." Perhaps these courts were thinking the public record of the creditor's lien would operate like a financing statement filed pursuant to Article 9 of the Uniform Commercial Code (at least as it existed before substantial revisions were proposed in 1999, and subsequently adopted in many states) before any funds were advanced and give the lien priority over any competing liens. *See, e.g.,* Kan. Stat. Ann. 84-9-312(5)(a) (Furse 1996) (generally, priority dates from first filed financing statement). However, this Court thinks that whatever public record of the

creditor's lien, now void, may exist instead operates like a lapsed financing statement that has not been timely renewed, which gives no priority over any other liens. *See, e.g.,* Kan. Stat. Ann. 84-9-403(2) (Furse 1996). The creditor's duty to make applicable public records reflect the invalidity of its lien is merely a housekeeping function that has no impact on the lien's enforceability. Since the security interest has already become void, the creditor cannot enforce it and loses no legitimate benefit or protection by making that fact a matter of public record or otherwise known to others.

■■■ Finally, the Court rejects the assertion or implication in many of the cases discussed above that the obligor's possible insolvency, other inability to repay the creditor in full immediately, or possible bankruptcy filing is a circumstance the court may consider under §1635 in making an equitable determination whether the creditor's security interest should remain in force following the obligor's rescission. Congress must surely have considered the impact of state homestead exemption laws on the creditor's ability to enforce the obligor's repayment obligations, because the statute applies only to security interests in principal dwellings, property that is frequently protected under state law, in full or in part, from the claims of unsecured judgment creditors. *See, e.g.,* Kan. Stat. Ann. 60-2301 (generally exempting full value of homestead of specified size from forced sale under any process of law). When the obligor cannot repay in full immediately under §1635, the creditor, no longer able to enforce the security interest voided by the statute, would have to sue, obtain a money judgment, and try to execute on the obligor's property. But enforcement of federal court money judgments is ordinarily limited by state exemption laws, *see* Fed. R.

Civ. P. 69(a); *Fink v. O'Neil,* 106 U.S. 272, 276–85, 1 S.Ct. 325, 27 L.Ed. 196 (1882) (under statute then in effect, execution on federal judgment could not reach homestead exempted by state law); *see also United States v. Yazell,* 382 U.S. 341, 355–58, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966) (indicating statute in *Fink* was predecessor to Rule 69, and relying on *Fink* to hold under Rule 69 that state law of coverture also restricted execution on federal judgment), so the creditor will often be barred from executing on the obligor's principal dwelling. Furthermore, the dwelling will often be the obligor's only asset that could be sold for enough to cover the debt. Even in states that provide only limited or no homestead protection, the creditor's judgment lien would typically be subordinate to any other prior judgment lien against the obligor's dwelling. *See, e.g.,* Neb. Rev. Stat. §40-101 (Westlaw 2001) (value of homestead limited to $12,500); Neb. Rev. Stat. §25-1504 (Westlaw 2001) (judgment debtor's land in county bound for satisfaction of judgment entered in that county); Neb. Rev. Stat. §25-1303 (Westlaw 2001) (when judgment recorded in another county, judgment imposes lien on land in that county as well); Neb. Rev. Stat. §25-1305 (Westlaw 2001) (when federal court judgment recorded, judgment imposes lien on land in county where recorded); *Pontiac Improvement Co. v. Leisy,* 144 Neb. 705, 709–11, 14 N.W.2d 384 (1944) (where two judgments rendered on same day, first one entered on judgment record had priority); *Sanne v. Sanne,* 167 Neb. 683, 686–87 & 691–92, 94 N.W.2d 367 (1959) (judgment lien can attach to homestead property to extent value of judgment debtor's interest exceeds exempt amount); *see also Lincoln Lumber Co. v. Elston,* 1 Neb.App. 741, 746–47, 511 N.W.2d 162 (1993) (indicating *Sanne* rule still Nebraska law in 1993). The Court cannot believe that Congress was not aware when it passed the statute

that state homestead exemption laws or prior judgment liens of other creditors thus would often keep a creditor from forcibly collecting on its unsecured claim against the obligor under §1635(b). Instead, as noted earlier, the Court agrees with the judge who dissented in *Palmer v. Wilson* that the possibility the principal debt would be uncollectible could easily have been predicted to be a common circumstance in rescission cases under §1635, 502 F.2d at 864, and believes that, because of homestead exemption and judgment lien laws, Congress must have been aware of that fact. Consequently, following rescission, the combination of (1) the obligor's unwillingness to again subject his or her homestead voluntarily to the creditor's claim or, in states where the homestead is unprotected, the intervention of prior judgment liens, and (2) the obligor's inability otherwise to repay cannot be viewed as a novel or unusual situation that Congress must not have foreseen when it created the statute. In fact, Congress must have known that creditors want to take security interests in principal dwellings because that is almost certainly the best way they can insure that they will be repaid, and that eliminating such a security interest would at least sometimes (and probably very frequently) mean that repayment would not occur. While traditional rescission is not a punitive remedy, the statutory rescission Congress created in §1635 can and often will be. This does not, however, justify courts in substituting their sense of what is equitable for the remedy that Congress created.

For these reasons, the Court concludes that Advanta's mortgage lien immediately became void when the debtors gave effective notice that they were exercising their right to rescind the transaction, and that the Court has no authority to change this effect of the rescission.

IT IS SO ORDERED.