REQUESTED BY: Senator Mark Quandahl Nebraska State Legislature
Your opinion request contains few specifics, but we assume that the governmental entities involved with the Bellevue Bridge are Sarpy County and the City of Bellevue. We have not been provided with any materials pertaining to the charter of the Bellevue Bridge Commission, so we have no information as to what that charter may provide, if anything, regarding dissolution of the commission.
The Nebraska Statutes dealing with "Interstate County Bridges" are found at Neb. Rev. Stat. §§ 39-855 through 39-876 (1998). Those statutes generally provide for the construction and operation of highway bridges between Nebraska and adjoining states. Among other things, those statutes allow Nebraska counties and municipal corporations to create bridge commissions for the construction and operation of interstate bridges, to issue revenue bonds for bridge construction, and to charge tolls on interstate bridges for payment of those revenue bonds.
At least two bills introduced during this legislative session deal with various aspects of the statutes pertaining to Interstate County Bridges. LB 550 would amend § 39-867 to state that when the revenue bonds issued by a city or city-appointed bridge commission for a particular bridge are paid in full, the ownership of that bridge would be transferred to the county in Nebraska in which the Nebraska end of the bridge is located. At that time, any existing bridge commission for such a bridge would be dissolved, and the county would take over the obligations of that commission. The county could collect tolls on the bridge to pay for its management, maintenance and upkeep.
LB 551, on the other hand, would amend § 39-856 so as to add many of the same provisions to that statute as those which would be added to § 39-867 by LB 550, except that the entity which would be designated to take over a bridge after its revenue bonds were paid off would be the city where the Nebraska end of the bridge is located, rather than the county. LB 551 would also allow a city so designated to defer dissolution of the bridge commission in question.
Given the introduction of LB 550 and LB 551, you have requested our opinion as to "which governmental entity is responsible for operating and maintaining the Bellevue Bridge once the outstanding bonds have been satisfied." In that context, you have posed two specific questions to us:
 1. When does the [Bellevue Bridge] Commission's responsibility to operate and maintain the bridge terminate?
 2. Which governmental entity does the [Bellevue Bridge] Commission transfer responsibility for management of the bridge to upon satisfaction of the outstanding bondholders?
After conversations with your staff, we understand that both of your specific questions pertain to the current status of the law involving the Bellevue Bridge, and assume that neither LB 550 or LB 551 has been enacted.
Both of your specific questions regarding the Bellevue Bridge Commission presume that the Commission's responsibility to operate the bridge terminates at some point under existing law, and that at that point, either a county or a city will be required to take over management and operation of the bridge.(1) However, our review of the existing law in this area leads us to a different conclusion.
Neb. Rev. Stat. § 39-868 (1998) provides that a bridge commission created under the statutes pertaining to Interstate County Bridges shall be a "public body corporate and politic" with the power "to contract, to sue and be sued, and to adopt a seal and alter the same at pleasure." Neb. Rev. Stat. § 39-870 (1998) provides further that:
 The [bridge] commission shall have power to establish bylaws, rules and regulations for its own government, and to make and enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers under sections 30-868 to 39-870. The commission may employ engineering, architectural and construction experts and inspectors, and attorneys, and such other employees as may be necessary in its opinion, and fix their compensations, all of whom shall do such work as the commission shall direct.
As a result, a bridge commission under the statutes pertaining to Interstate County Bridges is a public body corporate and politic with substantial powers to manage and conduct its own affairs.
We have been unable to find any Nebraska cases which define the terms "body corporate" or "body corporate and politic." However, cases from other jurisdictions indicate that the term "body corporate" is a term applied to corporations, public and private. Isner v. Interstate Commerce Commission, 90 F. Supp. 361 (E.D.Mich. S.D. 1950). In addition, the term "body corporate and politic" is a term applied to public corporations having the powers and duties of government. Utah State Building Commission, for Use and Benefit of Mountain States Supply Co. v. Great American Indemnity Co., 105 Utah 11, 140 P.2d 763 (1943). Therefore, it appears to us that bridge commissions created under the Interstate County Bridge statutes, including the Bellevue Bridge Commission, are public corporations, having governmental duties and powers.
Generally, a corporation will exist indefinitely and until it is legally dissolved, if the period of its existence is not limited by its charter. Pontiac Improvement Co. v. Leisy, 144 Neb. 705, 14 N.W.2d 384
(1944); 18 C.J.S. Corporations § 52. And, a corporation will continue to exist during, but not beyond, the period to which its existence is limited by its charter or by constitutional or statutory provisions. 18 C.J.S. Corporations § 52.
In the present instance, we have reviewed the various provisions of the statutes pertaining to Interstate County Bridges, and we have found no statutory provisions pertaining to dissolution of the bridge commissions created under those statutes. Nor have we found anything in those statutes which speaks generally to the termination of a bridge commission's responsibility to operate and maintain a bridge after its revenue bonds are retired, apart from a provision in § 39-867 which provides that bridge tolls shall be discontinued upon the payment of certain revenue refunding bonds. Consequently, absent some provision in the charter of the Bellevue Bridge Commission dealing with the dissolution of that commission(2), we believe that the Bellevue Bridge Commission and its obligation to maintain and operate the Bellevue Bridge continue indefinitely, even after satisfaction of the outstanding revenue bonds involving that structure. Under those circumstances, the Commission is not required to transfer its responsibilities with respect to the bridge to any other governmental entity. A different result involving termination of the Bellevue Bridge Commission would require passage of LB 550, LB 551 or other similar legislation.
Sincerely yours,
JON BRUNING
Attorney General
Dale A. Comer
Assistant Attorney General
Approved by:
_______________________________
Attorney General
pc: Patrick O'Donnell
Clerk of the Legislature
05-154-21