**WELLS FARGO BANK, N.A. and Option One Mortgage Corporation**

v.

**Ernest E. JAASKELAINEN and Kathleen M. Jaaskelainen.**

**Civil Action No. 08–11299–RWZ.**

United States District Court, D. Massachusetts.

May 28, 2009.

---

452

*MEMORANDUM AND ORDER*

ZOBEL, District Judge.

Wells Fargo Bank, N.A. ("Wells Fargo") and Option One Mortgage Corporation ("Option One") (collectively, "Appellants") appeal from the final order of the bankruptcy court granting judgment in favor of the debtor-appellees Ernest and Kathleen Jaaskelainen ("the Jaaskelainens" or

"Debtors"). For the reasons discussed below, the order of the bankruptcy court is affirmed in part and reversed in part and the case is remanded for further proceedings.

## I. Standard of Review

In considering an appeal from an order of a bankruptcy court, a district court reviews conclusions of law *de novo* but must accept the bankruptcy judge's findings of fact unless they were clearly erroneous. *TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Hill,* 387 B.R. 339, 345 (1st Cir. BAP 2008) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). "If the trial court's account of the evidence is plausible, in light of the record viewed in its entirety, a reviewing court may not reverse, even if convinced that if it had been sitting as a trier of fact, it would have weighed the evidence differently." *Id.*

## II. Factual Background

### A. The Refinancing

In November 2005, Debtors were facing an impending foreclosure of their home in Attleboro, Massachusetts (the "Property"). In an effort to stave off foreclosure they entered into a refinancing transaction (the "Refinancing") with Option One on November 28, 2005. In connection with the Refinancing, Debtors executed a note and mortgage to Option One secured by the Property. The total loan amount was $158,950.

The Refinancing closing occurred at the Property around 7:30 p.m. and took approximately one hour. Attorney Robert P.

Marks ("Marks") was engaged by Professional Settlement Services ("PSS") to act as closing agent for the Refinancing. In this capacity he was responsible for printing out the closing documents, presiding over the closing, and returning the signed documents to the lender. During the closing, Marks showed Debtors each document and briefly explained it to them before they signed. A "Notice of Right to Cancel" (the "NOR") was among the closing documents. The NOR is a form notice which discloses a borrower's limited right to rescind the transaction and is mandated by the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601–1667, and its Massachusetts counterpart, the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D ("ch.140D"). Both the TILA and the MCCCDA require the lender to provide two copies of the NOR to each borrower. *See* 12 C.F.R. § 226.23(b)(1); 209 C.M.R. § 32.23(2)(a). The bottom of the NOR contains an area for the borrowers' signatures confirming their receipt of two copies each of the NOR (the "Acknowledgment"). Marks specifically explained the NOR to Debtors, and they executed the Acknowledgment. The Debtors and Marks also signed a six-page document entitled "Instructions to Closing Agent" which stated in relevant part that the closing agent was required to provide to each borrower "two (2) completed, signed, and dated copies of the notice of right to cancel at the time of execution of the loan documents." At the closing Marks also executed an Affidavit of Settlement Agent in which he certified that he gave Debtors two copies each of the NOR. Debtors received a bound set of their closing documents (the "Closing Booklet") approximately three to five days after the closing.

Debtors defaulted on their loan payments in September 2006. By this time Option One had assigned the debt to Wells Fargo, although it remained as the servicer of the loan. Wells Fargo commenced foreclosure proceedings in February 2007. In March 2007 Debtors met with Attorney Theodore Koban ("Koban") to discuss bankruptcy. Koban referred the matter to Attorney Kenneth D. Quat ("Quat") for investigation of an issue not relevant to these proceedings. The Debtors met with Quat in April 2007. According to Debtors, at that meeting it was discovered that the Closing Booklet contained only two copies of the NOR on a single double-sided sheet of paper. On May 1, 2007, Debtors sent written notification to Wells Fargo requesting rescission of the Refinancing based upon their failure to each receive two copies of the NOR. Wells Fargo responded through a letter dated May 3, 2007, that Debtors were not entitled to rescind because they had signed the Acknowledgment, indicating that they had each received two copies.

**B. The Bankruptcy Court Proceedings**

On May 7, 2007, Debtors filed a voluntary petition for bankruptcy under Chapter 13. In "Schedule F–Creditors Holding Unsecured Nonpriority Claims" Debtors listed Option One as holding a claim in the amount of $181,976.90 in addition to $20,848 in other debt. On May 24, 2007, Option One filed a proof of claim asserting a claim in the amount of $182,380.86 secured by real property. On June 4, 2007, Debtors filed an objection to Option One's claim on the basis that they had previously exercised their right to rescind the Refinancing by mailing notices to Wells Fargo. Option One rejoined that the objection was baseless because Debtors were not entitled to rescind.

In July 2007 the Jaaskelainens filed an adversary proceeding against Wells Fargo and Option One, alleging in a single count

that Appellants violated TILA by failing to deliver two copies of the NOR to each Debtor.[1] Appellants moved for summary judgment in February 2008, arguing that Debtors could not show they did not receive the correct number of copies of the NOR and that in any event the MCCCDA, not TILA, applied. Debtors opposed on the basis that genuine issues of material fact remained as to whether they had received the correct number of copies and requested that they be allowed to amend their complaint to add a claim under the MCCCDA. The bankruptcy court denied the motion for summary judgment and subsequently allowed Debtors' motion to amend their complaint, construing the complaint to assert a claim under the MCCCDA rather than the TILA.[2] The bankruptcy court held a one-day trial on April 29, 2008, at which five witnesses testified[3] and 39 exhibits were admitted into evidence. The court took the matter under advisement and both parties submitted post-trial memoranda.

In its Memorandum of Decision ("Mem." (Docket # 9–14)), the bankruptcy court noted that under the MCCCDA, signing the Acknowledgment created a rebuttable presumption that Debtors had each received two copies of the NOR. See ch. 140D, § 10(c). It then found that Debtors had rebutted this presumption by: (1) testifying credibly that they did not receive any documents at the closing; and (2) showing that the Closing Booklet contained, at most, two copies of the NOR

instead of the four that were required. Although Appellants asserted that the present contents of the Closing Booklet are not representative of its contents back in 2005, the court rejected this argument. (See Mem., 23–24.) Both parties agreed that once Debtors rebutted the presumption of delivery the burden of proof shifted to Appellants to prove that each Debtor did receive two copies of the NOR. The court held that Appellants failed to meet this burden and, accordingly, that they had violated the MCCCDA It also concluded that Appellants did not fall within the safe harbor provision of the statute for "bona fide errors." See ch. 140D, § 32(c).

The violation allowed Debtors to rescind the Refinancing. Under the statute:

When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within twenty days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obli-

---

**1.** Debtors also argued that the NOR itself was legally insufficient. The bankruptcy court rejected this argument and Debtors have not pressed it on appeal. (See Memorandum of Decision ("Mem." (Docket # 9–14)), 20–21.)

**2.** The bankruptcy court correctly noted that the Board of Governors of the Federal Reserve System has exempted credit transactions within Massachusetts subject to the MCCCDA from chapters two and four of the

TILA. (Mem., 11 n. 64; see also Carye v. Long Beach Mortg. Co., 470 F.Supp.2d 3, 6 n. 1 (D.Mass.2007).) As a result, Debtors' claim under the TILA became a claim under the MCCCDA rather than an additional one.

**3.** The Jaaskelainens, Marks, Koban and Lisa Clary, the Legal Teams Action Lead for Option One, testified.

gor shall tender the property to the creditor, except that if return of the property in kind would be impractical or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within twenty days after tender by the obligor, ownership of the property rests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

Ch. 140D, § 10(b); see also 15 U.S.C. § 1635(b) (substantively identical TILA provision). Rescission under the TILA and MCCCDA differs from common law rescission in that the order of performance is reversed. Under the common law, the borrower would first need to return the loan proceeds to effect a rescission. In contrast, under the TILA and MCCCDA, the creditor must perform first and terminate any security interest it has as a result of the transaction before the borrower is required to return any loan proceeds. *See generally Large v. Conseco Fin. Serv. Corp.*, 292 F.3d 49, 55–56 (1st Cir.2002). In the present proceedings, the bankruptcy court concluded that the rescission terminated Appellants' security interest but tender by the borrower was not required due to the bankruptcy context. (*See* Mem., 28–29.) Accordingly, the court held that Appellants' "security interest is void and they hold nothing more than an unsecured claim which will receive the same dividend as other unsecured claims under the Debtors' Chapter 13 plan." (*Id.* at 29.) This disposition left Appellants with an unsecured claim in the amount of $142,806.68, in addition to liability for

Debtors' attorney's fees and costs. This appeal followed.

### III. Discussion

#### A. Denial of Summary Judgment Motion

█ Appellants assign error to the bankruptcy court's rejection of their summary judgment motion and its subsequent allowance of Debtor's motion to amend their complaint. Appellants suggest that these two rulings should be viewed separately, i.e., that since it was undisputed that the MCCCDA and not the TILA applied, the bankruptcy court committed error by denying their motion for summary judgment on the TILA claim, regardless of the fact that the court subsequently allowed Debtors to substitute for their TILA claim, a claim under the MCCCDA. However, it makes more sense to view these rulings together. Debtors moved to amend concurrently with their opposition to the summary judgment motion and noted the same in their opposition. Although it may have made more procedural sense for the bankruptcy court to allow the motion to amend prior to denying the motion for summary judgment, this is quibbling. The MCCCDA was modeled after the TILA and the statutes are interpreted identically. *See McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir.2007) ("the MCCCDA should be construed in accordance with the TILA").[4] Appellants do not argue with the substantive ruling that under either TILA or the MCCCDA there were material issues regarding Debtors' receipt of the required number of copies of the NOR which precluded summary judgment. Although they suggest that the motion to amend the complaint should not have been allowed at the summary judgment stage, the bankruptcy court has broad discretion to make

---

**4.** Both parties agree that cases interpreting the TILA are applicable to the MCCCDA.

case-management decisions, and this court's review is only for abuse of discretion. *See, e.g., In re Rauh*, 119 F.3d 46, 52 n. 10 (1st Cir.1997); *In re Choinski*, 214 B.R. 515, 518 (1st Cir. BAP 1997). It was well within that court's discretion to permit Debtors to proceed under the MCCCDA rather than TILA, particularly since the statutes are interpreted interchangeably and the substitution did not cause any delay in the litigation.

## B. Determination of MCCCDA Violation

■ Appellants assert error in the bankruptcy court's determination that Debtors are entitled to rescission due to Option One's failure to provide Debtors each with two copies of the NOR. This ruling presents one issue of fact and one of law, with varying standards of review. First, the court reviews the factual determination that Debtors did not each receive two copies of the NOR for clear error. Second, it reviews *de novo* the legal determination that Appellants do not qualify for the bona fide error defense.

### 1. Number of Copies of the NOR Received by Debtors

■ At the bankruptcy trial Marks could not remember any specific details about Debtors' closing and instead testified to his routine procedure at closings. He stated that borrowers would typically receive five copies of the NOR: one loose copy handed to each of them during the closing, and three copies in the bound Closing Booklet. The version of the Clos-

ing Booklet submitted into evidence had, at most, two copies of the NOR.[5] The parties spill a lot of ink addressing the question of whether the Closing Booklet submitted into evidence is a complete version of the Closing Booklet that Debtors received in 2005. However, ultimately this question is not dispositive. Marks testified that pursuant to his routine practice there would be, at most, three copies of the NOR in the Closing Booklet. The question therefore hinges upon whether Debtors received any copies of the NOR at the closing.

Although Debtors signed the Acknowledgment,[6] both testified that they did not receive any copies of the NOR at the closing; and Marks could not remember whether or not he had given Debtors copies at the closing. The bankruptcy court credited Debtors' testimony. Appellants argue that this was clear error given the inconsistencies in Debtors' deposition and trial testimonies. (*See* Appellant's Br. (Docket # 8), 36–37.) However, this court must give "due regard" to the "opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bank. P. 8013; *see also Williams v. First Govt. Mortg. and Investors Corp.*, 225 F.3d 738, 751 (D.C.Cir.2000) (lower court's "credibility determinations are entitled to the greatest deference" from the reviewing court). The bankruptcy court was uniquely positioned to assess the testimony of all witnesses through its direct observation of them, and it committed no error in crediting Mrs. Jaaskelainen's testimony despite

---

**5.** The Closing Booklet contained a single sheet with the NOR copied on each side. There is some question as to whether this single sheet constitutes one NOR or two, as the regulations provide that the notice "shall be on a separate document." *See* 209 C.M.R. § 32.23(2). Because resolution of this question would not alter the result this court as-

sumes *arguendo*, as the bankruptcy court did, that the double-sided sheet with the NOR on each side constituted two copies. (*See* Mem., 25–26.)

**6.** Debtors also signed the "Instructions to Closing Agent" sheet acknowledging that they had received sufficient copies of the NOR.

some inconsistencies (*see, e.g.*, Mem., 9 n. 47). This is particularly so since the only opposing testimony, by Marks, was based solely on his usual practice and not on any specific recollection of what occurred at the closing. Therefore, the ruling that the Debtors' testimony is sufficient to rebut the presumption of delivery stands. *See Stutzka v. McCarville*, 420 F.3d 757, 762–63 (8th Cir.2005) (affidavit by borrower stating that she had not received the documents at the closing "at the very least[ ] would have rebutted the presumption of delivery").

The burden remained on Appellants to prove that they did deliver a sufficient number of copies of the NOR to Debtors. *See Williams*, 225 F.3d at 751 (presumption of delivery requires borrower to come forward with evidence to meet presumption, but does not shift burden of proof to borrower). Appellants cannot meet this burden given the bankruptcy court's credibility determination. As discussed above, even assuming *arguendo* that the Closing Booklet had contained three copies of the NOR, that would still be insufficient.[7] The only way Debtors could have received a total of four copies (two each) is by receiving loose copies at the closing, a possibility foreclosed by their credited testimony. Therefore, the court's determination that Debtors did not receive sufficient copies of the NOR was not clearly erroneous.

### 2. Bona Fide Error Defense

■ Under the MCCCDA,

A creditor or assignee may not be held liable in any action brought under this section or section ten for a violation of this chapter, or any rule or regulation issued thereunder, if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. A bona fide error includes, but shall not be limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this chapter, or rule or regulation issued thereunder, is not a bona fide error.

Ch. 140D, § 32(c); *see also* 15 U.S.C. § 1640(c) (TILA counterpart). Although the list of bona fide errors in the statute is non-exhaustive, "[f]ederal courts have strictly limited this defense to purely and literally 'clerical' errors, ... [and] Massachusetts courts have indicated no different view." *Bizier v. Globe Fin. Servs., Inc.*, 654 F.2d 1, 3 (1st Cir.1981) (internal citations omitted). Although likely inadvertent, the failure to give each Debtor two copies of the NOR at the closing was not "clerical." In any event, the bankruptcy court was correct to conclude that the compliance procedures adopted by Option One to avoid this error were insufficient. As the Seventh Circuit has explained:

Congress required more than just the maintenance of procedures which were designed to provide proper disclosure[s] .... Rather, it required procedures de-

---

7. As Appellants explain,

Attorney Marks testified that the closing package that he received for the Appellees' loan would have contained three copies of the NOR. He would have had them both sign the same copy of the notice (which he would keep for return to the lender) and would have handed them the two extra copies at the closing. Therefore, the booklet of documents that the Jaaskelainens received should have contained three copies of the notice. When combined with the two that he handed to them at the closing, they would have received five copies of the notice, one more than legally required. (Docket # 8, 31.)

signed to avoid and prevent the errors which might slip through procedures aimed at good faith compliance. This means that the procedures which Congress had in mind were to contain an extra preventative step, a safety catch or a rechecking mechanism. Congress left the exact nature of the preventative mechanism undefined. It is clear, however, that Congress required more than just a showing that a well-trained and careful clerk made a mistake. On the other hand, a showing that the first well-trained clerk's [action] was checked by a second well-trained clerk or that one clerk [employed a procedure to double check his or her own action] would satisfy Congress' requirements.

*Mirabal v. Gen. Motors Acceptance Corp.*, 537 F.2d 871, 878–79 (7th Cir.1976), overruled on other grounds by *Brown v. Marquette Sav. and Loan Ass'n*, 686 F.2d 608, 614–15 (7th Cir.1982). Option One's procedure, as explained in the "Instructions to Closing Agent" form, required the agent to provide each borrower with two copies of the NOR and sign the Affidavit of Settlement Agent attesting to the fact that he had done so. The closing agent would then forward the loan papers, including the Acknowledgment, Affidavit of Settlement Agent, and Instructions to Closing Agent, to the lender. As the bankruptcy court explained,

> Option One never verified that the borrowers received a sufficient number of copies of the NOR and these procedures are not designed to do so. Instead, through an affidavit, they merely require the closing agent attest to delivery. The verification of the Affidavit of Settlement Agent is insufficient because it places the rechecking mechanism, if it could even be called that, in the person who made the mistake in the first place. The present case is illustrative of the problem: Attorney Marks testified that

he signed the Affidavit of Settlement Agent without ever having confirmed the contents of the Closing Booklet.

(Mem., 27.) The bankruptcy court's conclusion is unassailable.

## C. Rescission

In their adversary complaint Debtors sought: (1) rescission of the Refinancing transaction; (2) a declaration that the mortgage entered into in connection with the Refinancing was null and void; (3) a return of all money or property given to Appellants in connection with the Refinancing; (4) a declaration that Debtors were not obligated to tender the amounts remaining on the loan; and (5) an award of statutory damages, costs and attorney's fees. The bankruptcy court concluded that Debtors were not required to tender as a condition of rescission. The court reasoned that the Jaaskelainens were freed from their obligation to tender back amounts they had borrowed because "[c]onditioning rescission upon the debtor's payment therefore imposes an obligation from which the debtor has been legally freed" and to require the debtor to tender in a bankruptcy context "would unfairly discriminate among unsecured claims in violation of 11 U.S.C. § 1322(a)(3)." (*See* Mem., 28–29) (quoting *In re Myers*, 175 B.R. 122, 128–29 (Bankr.D.Mass.1994).) On *de novo* review I conclude that this determination was error.

### 1. Rescission is Not Automatic

■ The bankruptcy court held that Debtors sent a valid notice of rescission to Appellants and "[a]s such, the [Appellants'] security interest is void and they hold nothing more than an unsecured claim . . . ." (Mem., 29.) However, the majority of circuit courts addressing this issue, including the First Circuit, have concluded that rescission does not flow automatically

from the borrower's mailing of a notice of rescission. *See, e.g., Large,* 292 F.3d at 54 ("Neither [TILA] nor [Regulation Z] establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract."). The First Circuit continued: "If a lender disputes a borrower's purported right to rescind, the designated decision maker ... must decide whether the conditions for rescission have been met. Until such a decision is made, the [borrowers] have only advanced a claim seeking rescission." *Id.* at 54–55. *See also Thompson v. Irwin Home Equity Corp.,* 300 F.3d 88, 90 (1st Cir.2002) (demand for rescission does not automatically void the loan agreement); *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1172 (9th Cir.2003) (argument that notice of rescission constitutes rescission "makes no sense when, as here, the lender contests the ground upon which the borrower rescinds"). Because the security interest did not automatically become void when Debtors sought rescission, the bankruptcy court is entitled to determine whether they have met (or can meet) all of the conditions for rescission as part of its inquiry into whether rescission is available. *See Yamamoto,* 329 F.3d at 1172–73; *In re Ramirez,* 329 B.R. 727, 735–37 (D.Kan.2005).

**2. Imposition of Conditions on Rescission**

 Debtors argue that the provisions of the MCCCDA and its implementing regulations do not permit the court to modify the automatic voiding of Appellants' security interest upon Debtors' exercise of their right of rescission. As set forth *supra,* the MCCCDA sets forth a sequence of procedures to be followed when a borrower exercises his right to rescind; the statute provides that such procedures "shall apply except when otherwise ordered by a court." Ch. 140D, § 10(b); *see also* 15 U.S.C. § 1635(b)

(TILA). Section 32.23 of the Code of Massachusetts Regulations implements § 10(b) and provides:

(4) Effects of rescission.

(a) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(b) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(c) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under 109 CMR 32.23(4)(b). When the creditor has complied with 209 CMR 32.23(4), the consumer shall tender the money or property to the creditor....

(d) The procedures outlined in 209 CMR 32.23(4)(b) and (c) may be modified by court order.

209 C.M.R. 32.23; *see also* 12 C.F.R. § 226.23(d)(1)-(4) (substantively identical Federal Reserve Board Regulation Z implementing § 1635(b)). Debtors argue that the court may not modify subsection (a) to prevent Appellants' security interest from becoming void because the regulations only permit the court to modify the procedures in subsections (b) and (c). The Court of Appeals for the Ninth Circuit lucidly discussed and rejected this argument in *Yamamoto.* As that court noted, Debtors' argument "begs the question of when a transaction is 'rescinded.'" 329 F.3d at 1172. For Debtors to prevail, rescission must occur automatically upon notice of rescission without regard to

whether the law permits rescission, a notion that has been rejected because it does not comport with the underlying purposes of the statute. *Id.* As the court in *Ray v. Citifinancial, Inc.* explained:

> Section 1635(a) and the first sentence of section 1635(b), upon which [the debtor] relies, must be read in conjunction with the second, third, and fourth sentences of section 1635(b). Those three sentences modify conventional rescission doctrine (that contemplates a simultaneous restoration of the status quo ante) by requiring a creditor to take certain actions before becoming entitled to a tender from the debtor. However, if Congress had not contemplated that a court has the power to condition annulment of the transaction upon a debtor's return of that which he has received, its enactment of the sequencing provisions of section 1635(b) would have been nonsensical. Why should Congress have established a procedure for restoring the status quo ante if a debtor could avoid the obligations the procedure imposes upon him simply by asserting that his notice of rescission under section 1635(a) voided the creditor's security interest and eviscerated any rights that it might have other than as an unsecured creditor?
>
> Surely, Congress's establishment in the second, third, and fourth sentences of section 1635(b) of a procedure for restoring the status quo ante was not intended to be an empty gesture. Just as surely, Congress did not intend that if faced with a debtor's refusal to return the benefit he had received in defiance of the statutory mandate, a court of equity would be powerless to grant an effective remedy. Since these are the implications of [the debtor's] interpretation of the language of section 1635(a)

and the first sentence of section 1635(b), his interpretation must fail.

228 F.Supp.2d 664, 668 (D.Md.2002).

Although the First Circuit has not spoken, the majority of circuit courts to consider the issue agree that courts have the equitable power to condition rescission on tender by the borrower. *See, e.g., Am. Mortg. Network, Inc. v. Shelton,* 486 F.3d 815, 820–21 (4th Cir.2007); *Yamamoto,* 329 F.3d at 1172–73; *Williams v. Homestake Mortg. Co.,* 968 F.2d 1137, 1140 (11th Cir. 1992); *FDIC v. Hughes Dev. Co.,* 938 F.2d 889, 890 (8th Cir.1991); *Brown v. Nat'l Perm. Fed. Sav. and Loan Ass'n,* 683 F.2d 444, 447 (D.C.Cir.1982); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir. 1980); *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir.1976). As *Yamamoto* and *Williams* both noted, leaving courts free to exercise equitable discretion to modify rescission procedures comports with congressional intent:

> Upon application by the consumer or the creditor, a court is authorized to modify this section's procedures where appropriate. For example, a court might use this discretion in a situation where a consumer in bankruptcy or wage earner proceedings is prohibited from returning the property. The committee expects that the courts, *at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations* after the creditor has performed his obligations as required under the Act.

S.Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, 264–65 (emphasis added), *as quoted in Yamamoto,* 329 F.3d at 1173, and *Williams,* 968 F.2d at 1140 (noting that the addition of statutory language providing that procedures "shall apply except when otherwise ordered by a court" was added as a reflection of TILA's equitable

goal to "return the parties most nearly to the position they held prior to entering into the transaction"). *See also Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n,* 683 F.2d 444, 447 (D.C.Cir.1982) ("[a]l-though the right to rescind is [statutory], it remains an equitable doctrine subject to equitable considerations"). This view comports with the First Circuit's discussion of TILA in other contexts. *See McKenna v. First Horizon Home Loan Corp.,* 475 F.3d 418, 424 (1st Cir.2007) ("Congress made manifest that although it had designed TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations."); *id.* (discussing Congress' view that rescission was "the most draconian remedy available" and led to "devastating liability"); *see also Santos–Rodriguez v. Doral Mortg. Corp.,* 485 F.3d 12, 17 (1st Cir.2007) (similar).

Debtors suggest that in any event, tender should not be required as a condition for rescission in the bankruptcy context. It is not immediately clear why this is so. As *Ramirez* notes, the legislative history of § 1635(b) supports the modification of the rescission process in this context by specifically referring to bankruptcy. *See supra* ("For example, a court might use this discretion in a situation where a consumer in bankruptcy ...."). *Ramirez,* 329 B.R. at 741–42. Indeed, multiple courts have imposed conditions upon rescission in the bankruptcy context. *See, e.g., Quenzer v. Advanta Mortg. Corp.,* 288 B.R. 884, 886–89 (D.Kan.2003); *Ray,* 228 F.Supp.2d at 668–69; In *re Webster,* 300

B.R. 787, 802 (Bankr.W.D.Okla.2003); *In re Apaydin,* 201 B.R. 716, 724 (Bankr. E.D.Pa.1996); *In re Buckles,* 189 B.R. 752, 763–66 (Bankr.D.Minn.1995); *Lynch v. GMAC,* 170 B.R. 26, 30 (Bankr.D.N.H. 1994) ("This Court can see no reason why the circuit courts and the district court[s], in exercising their equitable powers, can condition the right of rescission, but the bankruptcy court cannot.").[8]

These courts premised their rulings on the equitable nature of rescission. If the creditor's secured interest were immediately void upon rescission, its claims would be relegated to an unsecured and possibly dischargeable status. "The net effect, then, would be that a debtor receives the entire benefit of the credit transaction, often substantial sums of money or what amounts to a free house, while the creditor receives nothing, which would be contrary to the purposes of rescission." *Ramirez,* 329 B.R. at 742 (quoting *In re Stanley,* 315 B.R. at 615). As *Ramirez* explained:

> [Debtors] are attempting to use an equitable remedy to create a legal right to effectively strip Household's mortgage lien, a right they are not accorded under bankruptcy law [citing 11 U.S.C. § 1322(b)(2) ]. Thus, the bankruptcy court Order requiring Mr. Ramirez to satisfy his reciprocal tender obligation prior to release of Household's mortgage is precisely the type of equitable condition contemplated by Congress. To hold otherwise would disproportionately punish Household for a technical violation of the TILA while giving the Ramirezes a windfall in excess of $80,000.

---

**8.** The bankruptcy court suggested that requiring tender would unfairly discriminate among unsecured claims in violation of 11 U.S.C. § 1322(a)(3). (*See* Mem., 29.) However, this rationale is premised upon the refuted notion that a notice of rescission automatically voids the creditor's security interest. *Cf. In re Williams,* 291 B.R. 636, 662 n. 27 (Bankr.

E.D.Pa.2003) (classifying lender's claim as unsecured but nonetheless requiring full payment because the claim "is different than other unsecured claims as it arises as a statutory entitlement according [the lender] full payment in connection with the rescission" of the loan).

*Id.; see also Quenzer,* 288 B.R. at 889 ("Even though the defendant violated TILA, automatically relegating its entire claim to unsecured status under these circumstances would be completely inequitable and would exact a penalty entirely disproportionate to its offense."); *Lynch,* 170 B.R. at 30 ("Accepting [Debtors'] position would allow chapter 13 to be utilized to provide a windfall not contemplated by the provisions of chapter 13."); *Shelton,* 486 F.3d at 820 (Debtors' assertion of "the right to simply walk away with a windfall of $313,468 without any further obligation" offends "traditional notions of equity").

Accordingly, the bankruptcy court was in error when it concluded that Appellants' security interest became void upon Debtor's notice of rescission and that requiring tender was inappropriate in the bankruptcy context.[9] Therefore, the case will be remanded to the bankruptcy court for consideration of the appropriate conditions to impose on Debtors' exercise of rescission. In undertaking this evaluation the bankruptcy court should consider traditional equitable notions, including such factors as the severity of Appellants' MCCCDA violation and the degree to which Debtors are able to pay the principal amount. *See Williams,* 968 F.2d at 1141 ("While the goal should always be to restore the parties to the status quo ante, rescission must also maintain its vitality as an enforcement tool.") (internal quotation marks and citations omitted).

### D. Attorney's Fees and Costs

■ Following its entry of judgment in favor of Debtors, the bankruptcy court approved their application for attorney's fees of $33,465 and costs of $954 against both Option One and Wells Fargo. Wells Fargo argues that it is not subject to an attorney's fee award because it is an assignee and the MCCCDA violation was not apparent on the face of the disclosure statement. However, it did not make this argument in the bankruptcy court and it is therefore waived. *See B&T Masonry Const. Co., Inc. v. Pub. Serv. Mutual Ins. Co.,* 382 F.3d 36, 40 (1st Cir.2004) ("legal theories not raised squarely in the lower court cannot be broached for the first time on appeal"). The bankruptcy court's ruling on this issue is affirmed.

Nonetheless, the court must address the issue as Debtors seek costs and attorney's fees incurred in this appeal. The MCCCDA and the TILA both require that a defendant pay the costs of the action and reasonable attorney's fees to any person who brings a "successful action" to enforce liability under those statutes. *See* ch. 140D, § 32(a)(3); 15 U.S.C. § 1640(a)(3). The bankruptcy court's ruling that a violation of the MCCCDA occurred has been affirmed by this court, and Debtors are accordingly entitled to costs and attorney's fees. *See Nigh v. Koons Buick Pontiac GMC, Inc.,* 478 F.3d 183, 186 (4th Cir. 2007). It is undisputed that: (1) Wells Fargo is an assignee; and (2) the MCCCDA violation was not apparent from the face of the disclosure. Accordingly, under Massachusetts law Wells Fargo is not liable for the attorney's fees incurred by Debtors in this appeal; such fees shall be paid solely by Option One. *See Mayo v. Key Fin. Servs., Inc.,* 424 Mass. 862, 678

---

**9.** I do not suggest that the bankruptcy court's analysis is unsupported, as there is a minority of courts which has adopted his view in thoughtful opinions. *See, e.g., In re Williams,* 291 B.R. 636 (Bankr.E.D.Pa.2003); *Celona v. Equitable Nat'l Bank,* 90 B.R. 104 (Bankr.

E.D.Pa.1988); aff'd, 98 B.R. 705 (E.D.Pa. 1989); *Myers v. Fed. Home Loan Mortg.,* 175 B.R. 122 (Bankr.D.Mass.1994). I have considered these arguments but simply find the majority position more persuasive.

N.E.2d 1311, 1313 (1997).[10] The amount of the award of fees and costs may be determined by the bankruptcy court on remand.

## IV. Conclusion

For the reasons set forth above, the bankruptcy court's judgment that Appellants violated the MCCCDA is AFFIRMED. The determination that rescission may not be conditioned upon tender by Debtors is VACATED, and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion. Judgment may be entered accordingly.

### JUDGMENT

In accordance with the MEMORANDUM AND ORDER entered 5/28/09; For the reasons set forth above, the bankruptcy courts judgment that Appellants violated the MCCCDA is AFFIRMED. The determination that rescission may not be conditioned upon tender by Debtors is VACATED, and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

---

10. In refusing to award attorney's fees against an assignee in a rescission action, the Supreme Judicial Court stated:

> Although a borrower is given the same right of rescission against an assignee of an obligation as against the original lender, other rights may be asserted under G.L. c. 140D against an assignee only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement.

*Mayo,* 678 N.E.2d at 1313.